TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00515-CV






USA Waste Services of Houston, Inc., Appellant


v.


Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg
Abbott, Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN003453, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





O P I N I O N




 In this tax protest suit, USA Waste Services of Houston, Inc. ("USA") appeals from
the grant of summary judgment in favor of Carole Keeton Strayhorn, Comptroller of Public
Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, "Comptroller"). (1)
In one issue, USA, a waste removal company, contends that it is entitled to a sales tax refund under
the sale-for-resale exemption. USA seeks a refund of sales taxes paid on steam cleaning services
that USA ordered after spilling waste on customers' property. For the reasons set forth below, we
affirm the judgment of the district court.

BACKGROUND


 During the tax audit period for this case, January 1, 1994 through March 31, 1997,
USA entered into contracts with commercial customers to remove their waste. In the course of the
waste removal, USA from time to time spilled liquid onto a customer's property, either from a trash
receptacle or from a USA truck. When a customer called to complain about a spill, USA hired AA
Mobile Steam Cleaning to clean up the spill. USA hired AA because it did not own steam cleaning
equipment. All of the steam cleaning relevant to this case occurred on the property of USA
customers.

 After an audit of USA's sales tax reports for January 1, 1994 through March 31, 1997,
the Comptroller assessed sales tax for USA's purchases of steam cleaning services performed on
customers' property. USA paid the sales tax under protest, then filed suit in a Travis County district
court. See Tex. Tax Code Ann. § 112.052 (West 2002) (suit after payment under protest). (2) In its
suit, USA claimed entitlement to a refund of $5,570.06 in sales taxes because it resold the steam
cleaning services to its customers. See id. §§ 151.006(1) (West 2002) (definition of "sale for
resale"), .302(a) (West 2002) (sale-for-resale exemption). Both parties filed traditional motions for
summary judgment based on statutory interpretation. USA argued that it was entitled to the sale-for-resale exemption and the Comptroller argued no entitlement. After a hearing, the district court
rendered final judgment, granting the Comptroller's motion for summary judgment and denying
USA's motion. In one issue, USA contends that because it is entitled to the sale-for-resale
exemption for the steam cleaning services, the district court erred in granting the Comptroller's
motion for summary judgment and denying its own.


STANDARD OF REVIEW


Summary Judgment

 The standards for review of a traditional summary judgment are well established: the
movant must show there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. See Tex. R. Civ. P. 166a(c); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Here, the
parties rely on statutory provisions and administrative rules to support their entitlement to summary
judgment. In general, matters of statutory construction are questions of law rather than issues of fact. 
City of Garland v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000).

 Generally, a party cannot appeal the denial of a motion for summary judgment
because it is an interlocutory order and thus not appealable. See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and
the district court grants one motion and denies the other, the unsuccessful party may appeal both the
prevailing party's motion and the denial of its own. See Holmes v. Morales, 924 S.W.2d 920, 922
(Tex. 1996). We review the summary judgment evidence presented by both sides, determine all
questions presented, and render such judgment as the trial court should have rendered. 
Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). We review the district court's
decision to grant summary judgment de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.
1994).

Statutory Construction

 Because our analysis involves interpretation of statutory provisions and administrative
rules, we employ well-settled principles of statutory construction. Statutory construction is a
question of law, which we review de novo. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734
(Tex. 2002). We must ascertain and give effect to the legislature's intent for the provision we are
construing. See Fleming Foods v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999); Union Bankers Ins.
Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994); Calvert v. Texas Pipe Line Co., 517 S.W.2d 777,
780 (Tex. 1974). The legislature's intent is determined by reading the language used in the particular
statute and construing the statute in its entirety. See In re Bay Area Citizens Against Lawsuit Abuse,
982 S.W.2d 371, 380 (Tex. 1998); Taylor v. Firemen's & Policemen's Civil Serv. Comm'n, 616
S.W.2d 187, 190 (Tex. 1981). We read every word, phrase, and expression in a statute as if it were
deliberately chosen, and presume the words excluded from the statute are done so purposefully. See
Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin
2002, pet. denied); City of Austin v. Quick, 930 S.W.2d 678, 687 (Tex. App.--Austin 1996) (citing
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)), aff'd, 7 S.W.3d 109 (Tex.
1999); see also 2A Norman J. Singer, Sutherland Statutory Construction § 47.25 (6th ed. 2000)
(stating that there is generally an inference that omissions from a statute are intentional).

 Furthermore, we give serious consideration to an agency's construction of a statute,
as long as the construction is reasonable and does not contradict the plain language of the statute.
Continental Cas. Co. v. Downs, 81 S.W.3d 803, 807 (Tex. 2002) (citing Tarrant Appraisal Dist. v.
Moore, 845 S.W.2d 820, 823 (Tex. 1993)). We recognize that the legislature intends an agency
created to centralize expertise in a certain regulatory area "be given a large degree of latitude in the
methods it uses to accomplish its regulatory function." Moore, 845 S.W.2d at 823. Courts, however,
"do not defer to administrative interpretation in regard to questions which do not lie within
administrative expertise, or deal with a nontechnical question of law." Rylander v. Fisher Controls
Int'l, Inc., 45 S.W.3d 291, 302 (Tex. App.--Austin 2001, no pet.) (quoting 2B Singer, supra § 49.04,
at 23-24).

 We construe the text of an administrative rule under the same principles as if it were
a statute. Phillips Petroleum Co. v. Texas Comm'n on Envtl. Quality, 121 S.W.3d 502, 507 (Tex.
App.--Austin 2003, no pet.) (citing Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n, 36
S.W.3d 635, 641 (Tex. App.--Austin 2000, no pet.)). We bear in mind that an administrative
agency has the power to interpret its own rules, and its interpretation is entitled to great weight and
deference. Id. The agency's construction of its rule is controlling unless it is plainly erroneous or
inconsistent. Id.


ANALYSIS


 USA seeks a sales tax refund under the "sale for resale" provision of the tax code. 
The parties agree that the steam cleaning services are taxable but disagree about whether USA is
responsible for paying the taxes. "The sale for resale of a taxable item is exempt from the taxes
imposed by this chapter." Tex. Tax Code Ann. § 151.302(a). The purpose of the sale-for-resale
exemption is to prevent double taxation. Sharp v. Clearview Cable TV, Inc., 960 S.W.2d 424, 426
(Tex. App.--Austin 1998, pet. denied). "[T]ax exemptions are subject to strict construction since
they are the antithesis of equality and uniformity." Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.,
426 S.W.2d 943, 948 (Tex. 1968); see North Alamo Water Supply Corp. v. Willacy County Appraisal
Dist., 804 S.W.2d 894, 899 (Tex. 1991); Upjohn Co. v. Rylander, 38 S.W.3d 600, 606 (Tex.
App.--Austin 2000, pet. denied). "An exemption cannot be raised by implication, but must
affirmatively appear, and all doubts are resolved in favor of the taxing authority and against the
claimant." Bullock v. National Bancshares Corp., 584 S.W.2d 268, 272 (Tex. 1979). Accordingly,
the claimant has the burden of clearly demonstrating that it is entitled to the exemption. Strayhorn
v. Raytheon E-Systems, Inc., 101 S.W.3d 558, 565 (Tex. App.--Austin 2003, pet. denied) (citing
North Alamo Water Supply, 804 S.W.2d at 899).

 A "sale for resale" is a sale of


 tangible personal property or a taxable service to a purchaser who acquires the
property or service for the purpose of reselling it . . . in the normal course of business
in the form or condition in which it is acquired or as an attachment to or integral part
of other tangible personal property or taxable service.



Tex. Tax Code Ann. § 151.006(1). Here, USA claims a sale-for-resale exemption of a taxable
service. Specifically, the steam cleaning company provided grounds cleaning, which is a real
property service under the Comptroller's rules. 34 Tex. Admin. Code § 3.356(a)(7) (2003). A real
property service may be eligible for a sale-for-resale exemption if "the buyer intends to transfer the
service as an integral part of a taxable service." Id. § 3.356(c)(2) (2003). A service is considered
to be an integral part of a taxable service "if the service purchased is essential to the performance
of the taxable service and without which the taxable service could not be rendered." Id. (emphasis
added).

 USA argues that the steam cleaning is essential to the performance of its contractual
obligation to remove all of its customers' waste, including waste that USA spills on the ground in
the process of removal. The Comptroller counters that USA does not qualify for the exemption
because ordering steam cleaning to clean up a spill that USA causes is not essential to the
performance of USA's waste removal service. It follows, the Comptroller urges, that USA is not
required to hire a steam cleaner but chooses to do so to keep its customers happy after they complain
about a spill. Thus, the Comptroller argues, USA's business decision does not constitute an essential
part of its waste removal service.

 USA relies on the summary judgment affidavit of Rosa Castro, who worked in USA's
operations department during the audit period, to establish that the steam cleaning was an integral
part of USA's service. Castro averred: "When USA emptied a customer's dumpsters or garbage
cans, waste often spilled onto the property of its customers. It was practically impossible for USA
to perform its waste removal services without spilling waste on its customers' property." She went
on to state: "To remove the spilled waste and complete its job, USA had to steam clean the ground
where the waste spilled. Since USA did not own steam cleaning equipment . . ., it hired AA to steam
clean the areas."

 Castro's affidavit, when read in isolation, conveys that USA ordered steam cleaning
services in most instances in which it provided services or, in any event, every time that it spilled
waste. However, in a response to a request for admission, USA admitted that it had a property steam
cleaned only when it made a spill but denied that it ordered steam cleaning every time that it spilled
waste. And counsel for USA stated in oral argument that in the process of USA's waste removal,
waste "sometimes" fell onto the ground. Sharon Wilson, USA's safety manager, averred in an
affidavit, attached to the Comptroller's motion, that USA "occasionally spills liquids" in the course
of waste removal. She went on to state that if a customer complains about a spill, she orders steam
cleaning. (3)

 USA argues that steam cleaning is an integral part of its waste removal service, but
USA's own admission and statement from its safety manager establish that USA did not order steam
cleaning every time that a spill occurred and that spills occurred only "sometimes." USA also asserts
that it is entitled to the sale-for-resale exemption because the steam cleaning induces its customers
to purchase USA's services. But we find no evidence in the record supporting this assertion. Quite
the opposite, one can conclude from Wilson's affidavit that USA ordered steam cleaning only after
a customer complained.

 USA then argues that the Comptroller's construction of the resale exemption in this
case is inconsistent with its construction of the exemption in other contexts. Included as an appendix
to USA's brief is a letter from the Comptroller to an electrical subcontractor, who had asked whether
its services to a general contractor were eligible for the sale-for-resale exemption. The Comptroller's
response was that "your company may accept a resale certificate from ABC Company in lieu of tax
on your remodeling charges if ABC Company rebills your services to [the] project as a part of
taxable remodeling services." (4) USA asserts that its relationship with the steam cleaner is no
different. However, other than the conclusory assertion in Castro's affidavit that "USA resold AA's
steam cleaning services to USA's customers in the same form or condition in which they were
acquired," USA presented no evidence that it rebills its customers for the steam cleaning. Further,
USA's waste removal contract with its customers contained no reference to steam cleaning.

 USA additionally argues that because the Comptroller has granted sale-for-resale
exemptions in instances in which the service or good involved was not essential to the overall service
provided, USA is also entitled to the exemption. For example, the Comptroller allowed the
exemption for shower slippers given to members of a country club and balloons given to customers
at a Mexican restaurant. (5) The Comptroller granted the exemption for the shower slippers because
"the items are considered transferred to the care, custody, and control of the members." (6) As to the
balloons, the Comptroller stated that "when dealing with restaurants . . ., our agency's policy is
somewhat broader than what you would think a 'sale for resale' is." (7) It allowed the exemption if
customers received the balloons as part of their meal but disallowed the exemption for balloons
purchased for decoration only. (8) The circumstances of those exemptions are not analogous to USA's
situation. The shower slippers fell directly within the statutory definition of resale of tangible
personal property as part of a service, see Tex. Tax Code Ann. § 151.302(b) (West 2002); the
balloons were exempt because of the Comptroller's relaxed standard for restaurants.

 USA also cites exemptions for third-party converter repair service ordered by a seller
of cable service and flea killers added as part of a carpet cleaning service, both of which are cited
in the Comptroller's rules as examples of integral parts of the services. See 34 Tex. Admin. Code
§§ 3.310(d) (carpet cleaning), .313(d)(1) (cable converter repair) (2003). Unlike USA's waste spills,
one can reasonably assume that the seller of the cable repair service did not cause the converter
damage. As to the carpet cleaning, one can reasonably assume the customer received the flea killer
as part of a package. Here, the steam cleaning occurred separately from USA's waste removal
service, only after a customer complained. The steam cleaning is more analogous to a construction
company paying for a plant that it accidentally backed over with one of its trucks. The replacement
of the plant is not an integral part of its service but instead is intended to make the customer whole.

 The facts demonstrate that USA seeks a sale-for-resale exemption for steam cleaning
that it ordered after a customer called to complain that USA had spilled waste on the customer's
property and not as the basis of any bargain between USA and the customer. On these facts, we
conclude that the steam cleaning is not an integral part of the waste removal service that USA
provides to its customers. See Tex. Tax Code Ann. § 151.006(1); 34 Tex. Admin. Code
§3.356(c)(2). Instead, USA ordered the steam cleaning to keep the business of an existing customer
and to make the customer whole. Construing the exemption against the taxpayer, as we must,
National Bancshares Corp., 584 S.W.2d at 272, we conclude that USA has not met the burden of
clearly demonstrating that it is entitled to the exemption. North Alamo Water Supply, 804 S.W.2d
at 899. Therefore, USA is not entitled to a refund under the sale-for-resale exemption for sales taxes
paid on the steam cleaning services. We overrule USA's issue and affirm the district court's grant
of summary judgment in favor of the Comptroller and denial of USA's motion for summary
judgment.


CONCLUSION


 The steam cleaning that USA ordered from a third party is a real property service
under the Comptroller's rules. 34 Tex. Admin. Code § 3.356(a)(7). A real property service may be
eligible for a sale-for-resale exemption if "the buyer intends to transfer the service as an integral part
of a taxable service." Id. § 3.356(c)(2). Here, USA failed to demonstrate that steam cleaning
ordered after USA spilled waste on a customer's property is an integral part of the waste removal
service that USA provides to its customers. Accordingly, we hold that USA is not entitled to a
refund under the sale-for-resale exemption for sales taxes paid on the steam cleaning services. We
affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 18, 2004
1. The Comptroller and the Attorney General are statutory defendants in tax protest suits. See
Tex. Tax Code Ann. § 112.151(b) (West 2002). Because their interests do not diverge in this case,
for convenience we will refer to them collectively as "Comptroller."
2. Because there have been no material revisions to the relevant provisions of the tax code
since the audit period, we will refer to the current code for convenience.
3. At oral argument, counsel for USA stated that Wilson's affidavit covered a larger spectrum
of spills because the affidavit was prepared for the administrative hearing before the Comptroller. 
Nevertheless, we consider the affidavit for all purposes.
4. See Tex. Comptroller of Pub. Accounts, STAR System No. 9008L1045B01 (Aug. 31,
1990), available at http://aixtcp.cpa.state.tx.us/star/openrec2.html.
5. See Tex. Comptroller of Pub. Accounts, STAR System Nos. 200206156T (June 6, 2002)
(balloons), 9207L1183D10 (July 17, 1992) (shower slippers), available at http://aixtcp.cpa.
state.tx.us/star/openrec2.html.
6. Tex. Comptroller of Pub. Accounts, STAR System No. 9207L1183D10.
7. Tex. Comptroller of Pub. Accounts, STAR System No. 200206156T.
8. Id.