NORTH ALAMO WATER SUPPLY
CORPORATION, Petitioner,

v.

WILLACY COUNTY APPRAISAL DIS-
TRICT & Willacy County Appraisal
Review Board, Respondents,

The Honorable Dan Morales, Attorney
General, State of Texas,
Intervenor–Respondent.

SHARYLAND WATER SUPPLY
CORPORATION, Petitioner,

v.

HIDALGO COUNTY APPRAISAL DIS-
TRICT & Hidalgo County Appraisal
District Review Board, Respondents.

Nos. C–8789, C–9525.

Supreme Court of Texas.

Feb. 20, 1991.

Rehearing Overruled April 3, 1991.

J.W. Dyer and R. Glenn Jarvis, McAllen, for North Alamo Water Supply Corp. and/or Sharyland, etc.

Russell R. Graham, Deborah S. Cartwright, Peter W. Low, and Bill Kimbrough, Austin, for Dan Morales, Atty. Gen.

Richard S. Talbert, Weslaco, for Willacy County, etc. and/or Hildalgo County, etc.

## OPINION

COOK, Justice.

This court consolidated two causes for submission because both present the issue of whether a non-profit water supply corporation qualifies for exemption from ad valorem taxation as a "purely public charity" under article VIII, section 2 of the Texas Constitution and section 11.18 of the Texas Tax Code. We hold that these corporations do not fit within the constitutional definition of a "purely public charity" and, for that reason, affirm the judgments of the court of appeals.

## I. THE NATURE OF THE CASE AND STATEMENT OF FACTS

Article VIII, sections 1 and 2 of the Texas Constitution provide, in pertinent part:

Sec. 1. (a) Taxation shall be equal and uniform. (b) All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution ... shall be taxed in proportion to its value ...

. . . . .

Sec. 2. (a) ... the legislature may, by general laws, exempt from taxation ... institutions of purely public charity; and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void.

Tex. Const. art. VIII, §§ 1, 2.

The general law enacted by the legislature to effectuate the constitutional provision allowing tax exempt status for "institutions of purely public charity" is section 11.18 of the Texas Tax Code. *See* Tex.Tax Code Ann. § 11.18 (Vernon Supp.1991). Section 11.18 provides that an organization qualifying as a "charitable organization" is entitled to an exemption from ad valorem taxation on its buildings and items of tangible personal property. The specific requirements an entity must meet to be classified as a charitable organization are also set out in section 11.18:

(d) A charitable organization must be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (h) of this section, engage exclusively in performing one or more of the following charitable functions:

. . . . .

(7) acquiring, storing, transporting, selling, or distributing water for public use;

. . . . .

(e) A charitable organization must be operated in a way that does not result in the accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain ...

(f) A charitable organization must, by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(1) pledge its assets for use in performing the organization's charitable functions....

Tex.Tax Code Ann. § 11.18(d), (e), (f) (Vernon Supp.1991).

North Alamo Water Supply Corporation (hereinafter "North Alamo") and Sharyland Water Supply Corporation (hereinafter "Sharyland") are Texas non-profit water supply corporations engaged in the business of acquiring, storing, transporting, selling, or distributing water for the use of the residents within their respective supply areas. Before any property owner may receive water from these corporations, that

person or entity must become a "member of the corporation" by paying a membership fee. The corporations also collect a connection charge and bill their "members" on a monthly basis for the water they receive. No one residing within a supply district can receive water from a water supply corporation without first paying the requisite fees and charges assessed by that corporation.

In 1986, North Alamo and Sharyland sought, in separate proceedings, exemptions from ad valorem taxes levied against their buildings and tangible personal property on the basis that each qualified as a charitable organization pursuant to section 11.18(d)(7) of the Texas Tax Code. The Willacy County Appraisal District and the Hidalgo County Appraisal District, respectively, denied the applications. Both corporations filed formal notices of protest with their respective appraisal review boards which were also denied. North Alamo and Sharyland then paid the outstanding ad valorem taxes and filed suits in the proper district courts challenging the denials.

Both cases were tried to the bench on stipulated facts. The trial court in Willacy County which heard North Alamo's claims rendered a judgment denying it tax exempt status as a charitable organization. Findings of fact and conclusions of law filed by the trial court stated that North Alamo was not a "purely public charity" as required by article VIII, section 2 of the Texas Constitution. In an opinion letter to the parties, the judge stated that he believed his holding did not result in an implied finding that section 11.18 of the Texas Tax Code was unconstitutional. He reasoned that section 11.18 establishes a two prong test that required an entity to first be found a "purely public charity" under the constitution and second, the entity must be engaged in one of the activities enumerated in section 11.18(d).

North Alamo appealed the trial court's judgment to the Thirteenth Court of Appeals in Corpus Christi, which affirmed the trial court's judgment on different grounds. 769 S.W.2d 690. The court of appeals determined that North Alamo was

not a "purely public charity" under section 11.18 because its assets were not properly pledged for use in performing charitable functions as required by section 11.18(f). The court also held that Tax Code section 11.18, enacted pursuant to the authority granted by article VIII, section 2, superseded "all common-law definitions of 'purely public charity,' " so that an entity seeking tax exempt status under section 11.18 need not meet any additional requirements other than those set out in that statute. The court of appeals did not reach the constitutional questions presented as it resolved the case on this basis.

The district court considering Sharyland's claims rendered a judgment which held: Sharyland did not meet the organizational requirements set out by section 11.-18(f)(1); Sharyland was not a "purely public charity" as required by the constitution because it did not provide services without regard for the recipient's ability to pay; and, therefore, Sharyland was not entitled to an exemption under section 11.18 of the Texas Tax Code. Sharyland appealed the adverse judgment to the Thirteenth Court of Appeals in Corpus Christi, the same appellate court which had earlier addressed North Alamo's claims under the same statute.

The court of appeals determined that Sharyland's bylaws did not properly pledge its assets for use in performing the corporation's charitable functions as required in section 11.18(f) of the Tax Code. 783 S.W.2d 297. The court again did not address the constitutionality of section 11.18, stating that the trial court was justified in finding that Sharyland did not meet the constitutional requirements of a "purely public charity" as it did not meet the pledging requirements of section 11.18(f)(1).

Both Sharyland and North Alamo come to this court seeking to enter the class of charitable organizations that are granted a constitutional exemption from the payment of ad valorem taxes. Before we consider whether the corporations meet the statutory provisions of section 11.18, we first look to the constitutional requirement that

the corporations be classified as "institutions of purely public charity."

## II. THE CONSTITUTIONAL REQUIREMENTS OF AN "INSTITUTION OF PURELY PUBLIC CHARITY"

The seminal decision construing the constitutional idiom "purely public charity" is *City of Houston v. Scottish Rite Benevolent Association*, 111 Tex. 191, 230 S.W. 978 (1921), in which this court stated:

In our opinion, the Legislature might reasonably conclude that an institution was one of "purely public charity" where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefitted persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.... Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which might otherwise become the obligation or duty of the community or the state.

.    .    .    .    .

"The word 'purely' was meant 'to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity ...'"

*Id.* at 198–99, 230 S.W. at 981 (quoting *Widows' & Orphans' Home v. Commonwealth*, 126 Ky. 386, 103 S.W. 354, 358 (1907)).

The test established in *Scottish Rite* has acted as a guide for subsequent decisions addressing this constitutional provision and has, at times, been stringently applied by this court. *See, e.g., River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851 (Tex.1963) (denying tax exempt status to a non-profit gardening society). Although the *Scottish Rite* test is still the primary source of authority looked to in determining what type of organization constitutes a "purely public charity," subsequent writings issued by this court have allowed or-

ganizations other than purely "almsgiving" charities to fit within the definition.

This court first recognized a distinction between almsgiving and non-almsgiving charities in *San Antonio Conservation Soc'y, Inc. v. City of San Antonio*, 455 S.W.2d 743 (Tex.1970). The San Antonio Conservation Society, a non-profit organization chartered for the purpose of preserving and restoring historical sites, sought a constitutionally authorized exemption from taxation as an institution of purely public charity. Looking to section 7 of Texas Revised Civil Statute article 7150, now recodified as section 11.18 of the Tax Code, the court noted that the definition of a "purely public charity" included the requirement that the benefits conferred by the organization must be given "without regard to poverty or riches of the recipient." *Id.* at 745 (quoting Tex.Rev.Civ.Stat. Ann. art. 7150, sec. 7 (Vernon 1960) (recodified as Tex.Tax Code Ann. § 11.18 (Vernon Supp.1991))).

In its consideration, the court noted that both its previous opinions and section 7 had defined a charity in the sense of one which was "almsgiving." *Id.* (citing *Hilltop Village, Inc. v. Kerrville Indep. School Dist.*, 426 S.W.2d 943 (Tex.1968); *City of Houston v. Scottish Rite Benevolent Ass'n*, 111 Tex. 191, 230 S.W. 978 (1921)). The court then looked to section 20 of article 7150 which provided that "non-almsgiving" charities organized for the purpose of "preserving historical buildings, sites and landmarks" were exempt from taxation. *Id.* at 745 (quoting Tex.Rev.Civ.Stat.Ann. art. 7150, sec. 20 (Vernon 1960) (recodified as Tex.Tax Code Ann. §§ 11.17 & 11.23(a) (Vernon 1982 and Vernon Supp.1991))).

After finding that the Conservation Society met the statutory requirements set out in section 20, the court turned to the *Scottish Rite* test and focused on the requirement that, in order to qualify as a purely public charity, the services provided by that organization must "affect all the people of a community or state by assuming, to a material extent, that which otherwise might become the obligation of the community or state." *Id.* at 746 (quoting *City of*

*Houston v. Scottish Rite Benevolent Ass'n,* 111 Tex. 191, 198–99, 230 S.W. 978, 981 (1921)). As the City conceded that the whole public received the benefits of the Conservation Society's work, this court looked to the requirement that the Society assume an obligation which would otherwise fall to the community or state. After citing many examples of the legislature's recognition of Texas' obligation to preserve its historical heritage and the state's efforts in matters of historical preservation, the court determined that the Conservation Society met the constitutional test and was entitled to an exemption from ad valorem taxation. *Id.* at 748.

In *City of Amarillo v. Amarillo Lodge No. 731,* 488 S.W.2d 69 (Tex.1973), this court again recognized that the services rendered by a charity could take a non-almsgiving form so long as the charity assumed, to a material extent, an obligation which would otherwise fall to the community or state. *Id.* at 71. The court went on to say, "[i]t is also essential that the institution be organized and operated exclusively for purposes of public charity. The fact that it performs some charitable acts or engages in some charitable activity is not enough to qualify it for an exemption authorized by Art. VIII, Sec. 2, of the Constitution." *Id.* at 71–72. The court then determined that the Lodge did not qualify for a tax exemption because its purpose was not entirely charitable, as it engaged in "fraternal," as well as charitable, activities. *Id.* at 72–73.

The most recent case decided by this court concerning the definition of a purely public charity seemingly blended any distinction which may have existed between an almsgiving and a non-almsgiving charity in stating:

> With the advent of present day social security and welfare programs, the traditional concept of charity, involving the extension of free services to the poor and alms-giving, will be rarely found since wide ranging assistance is available to the poor under such programs. Furthermore, the courts have defined charity to be something more than mere alms-giving or the relief of poverty and distress.

The ultimate consideration then, should be based upon an evaluation of the total operation of the institution engaged in humanitarian activities whose services are rendered at cost or less and which are maintained to care for the physical and mental well-being of the recipients. By that total operation the institution must assume "to a material extent, that which otherwise might become the obligation or duty of the community or the state."

*City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y,* 530 S.W.2d 806, 810 (Tex.1976) (citations omitted).

The court went on to hold that a mix of religious and charitable activities was not fatal to the organization's retention of the tax exemption so long as the charitable requirements were met. *Id.* at 810–11.

It is against the standards arising from this progression of cases that we now consider North Alamo and Sharyland's assertions that they qualify for tax exemption as institutions of purely public charity.

## III. IS A WATER SUPPLY CORPORATION A "PURELY PUBLIC CHARITY"?

■ North Alamo and Sharyland argue that they qualify as non-almsgiving charities and, as such, the only test they must meet under *San Antonio Conservation Society* is that they "assume to a material extent, that which otherwise might become the obligation or duty of the community or the state." The supply of water to the public, they argue, is clearly a duty which would fall to the government if the corporations did not provide their services. Thus, the corporations conclude that they are exempt from ad valorem taxation because they qualify as "institutions of purely public charity."

■ While we recognize that the benevolent ends sought to be accomplished by a charity may take some form other than almsgiving, *see City of Amarillo,* 488 S.W.2d at 71, we disagree that different tests exist for different types of charities. Any organization, whether classified as

almsgiving or non-almsgiving, which seeks to be classified as a "purely public charity" must make no gain or profit and be organized to accomplish ends wholly benevolent by engaging in humanitarian services maintained to care for the physical or mental well-being of its recipients. The total operation of the charity must affect all the people of a community or state by assuming, to a material extent, services which otherwise might devolve to and become the obligations of the community or state. *City of McAllen,* 530 S.W.2d at 810; *San Antonio Conservation Soc'y,* 455 S.W.2d at 746; *Scottish Rite Benevolent Ass'n,* 111 Tex. at 198–99, 230 S.W. at 981.

�damaged It is important that this test be carefully applied, as exemptions from taxation are not favored by the law and will not be favorably construed. *See generally River Oaks Garden Club v. City of Houston,* 370 S.W.2d 851, 854 (Tex.1963). Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally. *Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 271–72 (Tex.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980); *Hilltop Village, Inc. v. Kerrville Indep. School Dist.,* 426 S.W.2d 943, 948 (Tex.1968). Accordingly, the burden of proof of clearly showing that the organization falls within the statutory exemption is on the claimant. *Bullock,* 584 S.W.2d at 272.

Applying the constitutional test to the facts at hand, we acknowledge that these non-profit corporations provide a "humanitarian" service necessary to the physical well-being of the recipients that might fall to the government in their absence. However, neither North Alamo nor Sharyland meet the remainder of the test. Unlike the benefits provided by charities entitled to this exemption, the benefits dispensed by

these corporations do not in any way enure to the entire community but only to individual water district "members" who are able to pay for those benefits. These corporations are not organized to provide charitable services to the community as a whole but are organized solely for the purpose of selling water to those within the boundaries of the district who can afford to pay the costs assessed.[1]

�damaged North Alamo and Sharyland contend that they are not required to meet the constitutional test for a "purely public charity" because article VIII, section 2 of the constitution grants to the legislature the power to define such an organization by the passage of "general laws." They argue that section 11.18 of the Tax Code, which was passed in accordance with that power, is the legislative definition and the sole standard they must meet in order to be viewed as "institutions of purely public charity." *See North Alamo Water Supply Corp.,* 769 S.W.2d at 693. We disagree with this contention.

The assertion that statutory provisions can replace constitutional requirements is erroneous. This is not the first time we have been called on to determine if an organization which qualifies for a tax exemption under the applicable statutes is constitutionally entitled to that exemption as well. *See City of Amarillo,* 488 S.W.2d at 72–73. Before an organization can be considered for qualification for tax exempt status under section 11.18 of the Texas Tax Code, that organization must first meet the applicable constitutional requirements which entitle those organizations to seek the exemption. *Id.; see also San Antonio Conservation Soc'y, Inc. v. City of San Antonio,* 455 S.W.2d 743, 746 (Tex.1970); *City of Houston v. Scottish Rite Benevolent Ass'n,* 111 Tex. 191, 198, 230 S.W. 978, 980 (1921); *Dallas Symphony Ass'n, Inc. v. Dallas County Appraisal Dist.,* 695

---

1. We note that the legislature has passed, on two separate occasions, joint resolutions which placed proposed constitutional amendments on the ballot seeking to specifically exempt from taxation all real and personal property owned by non-profit water supply corporations. *See* Tex.S.J.Res. 25, 63rd Leg., R.S., 1973 Tex.Gen. Laws 2470; Tex.S.J.Res. 6, 61st Leg., R.S., 1969 Tex.Gen.Laws 3223–24. Neither amendment was approved by the voters.

S.W.2d 595 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

Looking first to the constitutional requirements, we hold that North Alamo and Sharyland are not purely public charities under the Texas Constitution and therefore are not entitled to tax exempt status on that basis.[2] In accordance with this opinion, the judgments of the court of appeals are affirmed.

---

**2.** This is not the first time a water supply corporation has sought a tax exemption based on the provisions of article VIII, § 2. *See Leander Indep. School Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908 (Tex.1972). In *Leander Indep. School Dist.*, the Cedar Park Water Supply Corporation sought a statutory exception from the payment of ad valorem taxes pursuant to the provision in article VIII, § 2 which provided that "public property used for public purposes" would be exempted from taxation. *Id.* at 910. On appeal, this court determined that the private property of a water supply corporation did not meet that constitutional standard, even if that property was used for public purposes, and affirmed the taxing authority's denial of the exemption. *Id.* at 912.