MISSION PALMS RETIREMENT HOUSING, INC., Appellant,

v.

HIDALGO COUNTY APPRAISAL DISTRICT and Hidalgo County Appraisal Review Board, Appellees.

No. 13–93–406–CV.

Court of Appeals of Texas, Corpus Christi.

March 16, 1995.

Rehearing Overruled April 13, 1995.

J. Elliott Beck, Austin, for appellant.

Richard S. Talbert, Weslaco, for appellees.

Before GILBERTO G. HINOJOSA [1], FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

In this appeal, Mission Palms Retirement Housing, Inc. seeks a charitable exemption from *ad valorem* taxes for the period from 1990 through 1992. Mission Palms sought this exemption first with the Hidalgo County Appraisal District and then from the Hidalgo County Appraisal Review Board (referred to collectively as "Hidalgo County"). When the Appraisal District denied its application and the Review Board upheld this denial, Mission Palms sued Hidalgo County. The trial court rendered a take-nothing judgment after a bench trial on stipulated facts. Mission Palms appeals the trial court's judgment under two points of error. We affirm.

## FACTS

The dissolution provision from Mission Palms' articles of incorporation is the only stipulated fact relevant to this appeal. Mission Palms' articles of incorporation provide as follows:

In the event of the dissolution of the Corporation or other discontinuance or winding up of its affairs, or other liquidation or conveyance of its assets, the Corporation's property shall not be conveyed to any organization created or operated for profit or to any individual for less than the fair market value of such property, and all assets remaining after payment of the Corporation's debts shall be conveyed or distributed only to another nonprofit corporation which is organized for an educational or charitable purpose and is at that time exempt under Section 501(c)(3) of the Internal Revenue Code other than one created for religious purposes, PROVIDED, however, that the Corporation shall at all times have the power to convey any and all of its property to the Secretary of Housing and Urban Development in satisfaction of any indebtedness to the Secretary of Housing and Urban Development.

## SECTION 11.18(f) OF THE TEXAS TAX CODE

Section 11.18(f) of the Texas Tax Code addresses the limited uses to which a charitable organization may commit its assets. This section requires that

A charitable organization must, by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(1) pledge its assets for use in performing the organization's charitable functions, and

(2) direct that on discontinuance of the organization by dissolution or otherwise:

(A) the assets are to be transferred to this state or to an educational, religious, charitable, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1986, as amended....

TEX.TAX CODE ANN. § 11.18(f) (Vernon 1982).

## MISSION PALMS' DUAL BURDEN

■ Hidalgo County argues that the dissolution provision allowing Mission Palms to transfer assets to the Secretary of Housing and Urban Development (HUD) violates section 11.18(f)(2)(A). Mission Palms presents its counter arguments in its first point of error.

1. Former Justice Gilberto Hinojosa not participating.

Mission Palms contends that the dissolution provision in its articles of incorporation does not affect the quality of its charitable work. *See North Alamo Water Supply v. Willacy County Appraisal District,* 804 S.W.2d 894, 897–99 (Tex.1991) (discussing constitutional test regarding quality of an organization's charity as a tax exemption prerequisite, which Hidalgo County does not assert as grounds for denying Mission Palms' exemption). As a result, Mission Palms concludes that it qualifies as a "purely public charity" and should therefore receive an exemption from *ad valorem* taxes on this constitutional basis. But the *North Alamo* court recognized that the constitutional test to determine whether an organization is entitled to tax exemption must be applied alongside section 11.18. *Id.* at 899–900; *see also Aransas Hosp., Inc. v. Aransas Pass Indep. Sch. Dist.,* 521 S.W.2d 685, 689 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.).

■ Parties claiming a tax exemption bear the dual burden of passing the constitutional test as well as affirmatively proving that they clearly fall within the statutory exemption. *Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 272 (Tex.1979); *Aransas Hosp.,* 521 S.W.2d at 689. In addition, the taxing authority enjoys the benefit of both a strict construction of the exemption-granting statute and the resolution of all doubts against the party claiming an exemption. *Bullock,* 584 S.W.2d at 272.

The dissolution provision quoted above allows Mission Palms to distribute "any and all" of its property to HUD in satisfaction of "any" indebtedness. This provision does not clearly limit such a transfer to the amount of Mission Palms' indebtedness. Yet a strict construction of section 11.18(f)(2)(A) requires that a charitable organization's articles of incorporation must restrict the possible distributees of its assets upon dissolution.

The statutory list of approved distributees includes only the State of Texas and certain educational, religious, charitable, or other similar organizations. HUD does not fall within this category. Under its articles of incorporation, Mission Palms has shirked the responsibility of ensuring that only appropriate distributees will receive its assets. As a

prerequisite to the tax exemption, section 11.18(f)(2)(A) demands that all charitable organizations accept this obligation as part of their governing regulations. Mission Palms has not met this requirement.

Mission Palms was obliged to affirmatively prove that it met both the statutory and constitutional requirements before it could claim an exemption. Because Mission Palms has failed to adopt the statutory limitation on the possible distributees of its assets upon dissolution, we overrule Mission Palms' first point.

## SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION

■ In its second point, Mission Palms contends that we cannot accept Hidalgo County's interpretation of section 11.18(f)(2)(A) because such a law would be preempted by federal laws. Under the Supremacy Clause, there are three broad areas in which federal laws preempt state laws: express preemption, preemption by a pervasive federal legislative scheme, and preemption by conflict. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). All three types of preemption require congressional intent to supersede state authority with federal laws and regulations. *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986).

### Express Preemption

■ Article I of the U.S. Constitution vests Congress with the authority to expressly preempt state laws by virtue of the Supremacy Clause. *See* U.S. CONST. art. VI, cl. 2; *California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 1664–65, 104 L.Ed.2d 86 (1989). The federal laws cited by Mission Palms contain no explicit statement of congressional intent to preempt state authority to pass laws applicable to HUD-loan recipients. *See, e.g.,* National Housing Act of 1959, 12 U.S.C. § 1701 et seq. (as amended); United States Housing Act of 1937, 42 U.S.C.

§ 1437 et seq. (as amended). Consequently, section 11.18(f)(2)(A) of the Texas Tax Code is not expressly preempted by any of the federal legislation under review.

## Preemption by Pervasive Federal Scheme

■ Mission Palms argues that the federal laws governing public-housing loans are so comprehensive that Congress has preempted all state laws that might apply to HUD-loan recipients. We recognize that a "scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

To show the breadth of federal legislation in this area, Mission Palms points to the National Housing Act of 1959, the United States Housing Act of 1937, and various Department of Housing and Urban Development Acts. But Mission Palms cites little federal law that directly concerns the issue of local taxation.

The few regulations that do address the local-taxation issue contradict Mission Palms' position. These regulations contemplate a process whereby HUD-loan recipients must apply for local tax exemptions, which may or may not be granted by the local taxing authority. *Cf.* HUD HANDBOOK 4571.1 Rev. 2 (1983) (requiring loan recipients to apply for local tax exemptions when appropriate and providing forms to report whether such exemptions were granted or denied).

The fact that the HUD Handbook envisions an application procedure for local tax exemptions is an anathema to any preemption of state laws by a pervasive scheme of federal regulation. Accordingly, we cannot conclude that Congress has left no room for the states to pass local *ad valorem* taxes that might apply to HUD-loan recipients.

## Preemption by Conflict

■ State laws are also preempted when they conflict with federal laws to the extent that simultaneous "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Grow-*

*ers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Preemption by conflict includes instances where state law creates "an obstacle to the accomplishment and execution of the full purposes and objectives of" the federal law. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

In this case, conformity with the relevant state law does not prevent compliance with any of the federal laws cited by Mission Palms. Section 11.18(f)(2)(A) governs only whether a corporation will receive a charitable tax exemption. Consequently, the Texas Tax Code does not make compliance with any federal law a "physical impossibility." Further, Mission Palms concedes that it has now received HUD approval for an amended dissolution provision that complies both with Texas's prerequisites for a charitable tax exemption and with all HUD requirements. Accordingly, we need only consider whether section 11.18(f)(2)(A) impedes fulfillment of the congressional intent embodied by the laws applicable to HUD-loan recipients.

Hidalgo County does not dispute that the intent of the relevant federal legislation is to facilitate private nonprofit corporations in providing economical housing for the elderly. *See, e.g.,* National Housing Act, 12 U.S.C. § 1701q(a)(1) (1989). The intent to ensure that the program is run efficiently may also be inferred. *Cf., e.g., Id.* § 1701q(a)(2)(B) (HUD construction-loan recipients must show that "construction will be undertaken in an economical manner and that it will not be of elaborate or extravagant design"). Mission Palms argues that Hidalgo County's interpretation of section 11.18(f)(2)(A) frustrates the federal desire to adopt an efficient means of promoting low-cost housing for the elderly. We cannot agree.

Neither the federal regulations cited by Mission Palms nor any authority that we have found dictates a mandatory dissolution provision that is incompatible with section 11.18(f)(2)(A). No federal law requires HUD-loan recipients to adopt language allowing them to convey "any and all" of their property to HUD "in satisfaction of any indebtedness" whatsoever. Without violating any HUD requirement that it has cited, Mis-

sion Palms could have easily availed itself of the charitable tax exemption by adopting a more carefully worded dissolution provision. The requirements of section 11.18(f)(2)(A) are not so burdensome that they create an obstacle to the federal objective of promoting low-cost housing for the elderly. Accordingly, we overrule Mission Palms' second point of error.

## NEWLY DISCOVERED EVIDENCE

 In the second supplement to its brief, Mission Palms raises the additional argument that Hidalgo County improperly denied the tax exemption by enforcing section 11.18(f)(2)(A) inequitably. In support of this new argument, Mission Palms asks that we take judicial notice of Hidalgo County's rulings on other organizations' applications for charitable tax exemptions. Mission Palms also requests that we allow late amendment of the record to incorporate these rulings and that we consider these supplemental arguments as they might apply to its first point of error. In this motion, Mission Palms notes that it did not become aware of these other rulings until after oral argument in this court and, therefore, long after the bench trial on stipulated facts.

The Texas Supreme Court addressed a similar issue in *General Electric v. Falcon Ridge Apartments*, 811 S.W.2d 942 (Tex. 1991). The *General Electric* court reviewed the actions of an appellate court that had considered evidence raised for the first time on appeal by writ of error to the court of appeals. Reversing the court of appeals, the supreme court explained its ruling as follows:

> Our system is founded upon a belief that trial courts should first be given the opportunity to consider and weigh factual evidence. Permitting challenge to a judgment based on affidavits first filed in the appellate court undermines this judicial structure. The appropriate remedy when extrinsic evidence is necessary to the challenge of a judgment is by motion for new trial, Tex.R.Civ.P. 320, or by bill of review filed in the trial court.

*Id.* at 944.

We grant Mission Palms' motion to take judicial notice of the other tax exemption rulings but conclude that these rulings have no bearing on either of the assigned points of error. *See Office of Pub. Util. Counsel v. Public Util. Comm'n,* 878 S.W.2d 598, 600 (Tex.1994) (discussing appellate court's discretion to take judicial notice). An appellate court is not the appropriate forum for an immediate resolution of any broader issues raised by these tax exemption rulings. Because these rulings do not affect our disposition of this appeal, we dismiss the remainder of Mission Palms' motion as moot.

## CONCLUSION

Having considered the arguments assigned to Mission Palms' two points of error, we affirm the judgment of the trial court.