# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====
## NO. 03-05-00245-CV
=====

**E. de la Garza, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, as Comptroller of Public Accounts and Greg Abbott, as Attorney General for the State of Texas, Appellees**

=====
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN003589 HONORABLE DARLENE BYRNE, JUDGE PRESIDING**
=====

## M E M O R A N D U M   O P I N I O N

In this tax protest suit, E. de la Garza, Inc., a wholesale grocery supplier, appeals a summary judgment granted in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, "Comptroller").[1]  In two issues, de la Garza claims entitlement to a refund under the "sale-for-resale" exemption of the tax code for the sales taxes it paid on paper bags and plastic sacks sold to customers who had blanket resale certificates.  *See* Tex. Tax Code Ann. § 151.302(a) (West 2002); *see also* 34 Tex. Admin. Code § 3.285(b)-(c) (2003).  De la Garza also asserts that the Comptroller agreed to correct an error

---

[1]  The comptroller and the attorney general are statutory defendants in tax protest suits.  *See* Tex. Tax Code Ann. § 112.151(b) (West 2001).

in its audit figures as part of the final order in the district court litigation but failed to include that correction in the summary judgment order.

We conclude that de la Garza is not entitled to a refund under the sale-for-resale exemption because bags and sacks may not be purchased for resale under section 151.302. *See* Tex. Tax Code Ann. § 151.302 (c)-(d). Because we also conclude that the Comptroller failed to correct the error in its audit figures as part of the summary judgment order, we modify the judgment to include the correction of the Comptroller's audit error and, as modified, affirm the district court's judgment.

**BACKGROUND**

During the audit period of January 1, 1993, through December 31, 1996, de la Garza sold paper bags and plastic sacks to grocers, convenience stores, bakeries, and restaurants. Although de la Garza considered the bags and sacks to be taxable items, it did not collect sales tax from purchasers who presented blanket resale certificates because it thought such sales were tax-exempt sales for resale. *See id*. § 151.006(1) (West 2002) ("sale for resale" definition); *see also* 34 Tex. Admin. Code § 3.285(a)(2)(A) (same), (b) (acceptance of resale certificates), (c) (blanket resale certificates).

De la Garza prepaid $50,000 of sales tax after the Comptroller's audit. After an administrative hearing in which the Comptroller denied the applicability of the sale-for-resale exemption, de la Garza paid an additional $33,138.14 of sales tax. De la Garza then filed suit in Travis County district court seeking refund of the total $83,138.14 sales tax it paid, contending that

the sales of paper bags and plastic sacks to its customers qualified for the sale-for-resale tax exemption. *See* Tex. Tax Code Ann. §§ 112.052 (West 2001) (suit after payment under protest); 151.302(a) (sale-for-resale exemption).[2] The Comptroller filed a motion for summary judgment under rule 166a arguing that the sale-for-resale exemption was inapplicable to de la Garza's sales of bags and sacks. *See* Tex. R. Civ. P. 166a. After a hearing, the district court granted the Comptroller's motion.

In its first issue, de la Garza argues that the district court should not have granted the summary judgment because, as a matter of law, the section of the tax code that refers to the taxability of "bags" applies to packaging supplies used by manufacturers, but not those used by retailers, to transport their products. In its second issue, de la Garza argues that there were factual disputes concerning whether (i) it was notified when the Comptroller changed its interpretation of the tax law to include grocery bags and sacks as taxable items, (ii) it collected sales tax on the bags from customers who did not have a resale certificate, and (iii) it accepted the resale certificates in good faith. It also asserts that the summary judgment order excluded relief it was due based on the Comptroller's admitted audit error, which the Comptroller had agreed to correct in the final order.

## ANALYSIS

### Standard of Review

We review the district court's decision to grant summary judgment *de novo*. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a motion for

---

[2] Because there have been no material revisions to the relevant provisions of the tax code since the audit period, we will refer to the current code.

summary judgment under rule 166a(c), the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *See id*. at 157 (citing Tex. R. Civ. P. 166a(c)).

Statutory construction matters are generally questions of law that are reviewed *de novo*.  *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002).  In construing a statute, our objective is to determine and give effect to the legislature's intent.  *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *see also* Tex. Gov't Code § 312.005 (West 2005).  We look first to the "plain and common meaning of the statute's words."  *Id*. (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)).  If a statute's meaning is unambiguous, it may be interpreted according to its plain meaning.  *Id*.  Legislative intent is derived from the entire act, not isolated portions.  *Id*.

An administrative agency that is created to centralize expertise in a certain regulatory area receives "a large degree of latitude in the methods it uses to accomplish its regulatory function." *State v. Public Util. Comm'n*, 883 S.W.2d 190, 197 (Tex. 1994).  Statutory tax exemptions are disfavored and construed strictly because they undermine equality and uniformity by placing a greater tax burden on some businesses and individuals rather than distributing the burden equally on all taxpayers.  *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991).

Because the district court's order granting summary judgment does not specify the basis for its ruling, we must affirm the summary judgment if any of the theories presented to the trial

4

court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004).

**Section 151.302 Is Not Limited to Manufacturers**

Section 151.006(1) of the tax code defines a sale for resale as a "sale of tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it. . . ." *See* Tex. Tax Code Ann. § 151.006(1). Both parties agree that since 1991 grocery bags and sacks have been taxable items. Thus, the only issue is whether the bags and sacks qualify for the sale-for-resale exemption under section 151.302. *See id*. § 151.302. Section 151.302 states:

(a) The sale for resale of a taxable item is exempted from the taxes imposed by this chapter.

(b) Tangible personal property used to perform a taxable service is not considered resold unless the care, custody, and control of the tangible personal property is transferred to the purchaser of the service.

(c) Internal or external wrapping, packing, and packaging supplies used by a person in wrapping, packing, or packaging tangible personal property or in the performance of a service for the purpose of furthering the sale of the tangible personal property or the service *may not be purchased by the person for resale.*

(d) In this section, "wrapping," "packing," and "packaging supplies" include:

(1) wrapping paper, wrapping twine, *bags*, cartons, crates, crating material, tape, rope, rubber bands, labels, staples, glue, and mailing tubes; and

(2) excelsior, straw, cardboard fillers, separators, shredded paper, ice, dry ice, cotton batting, shirt boards, hay laths, and property used inside a package to shape, form, stabilize, preserve, or protect the contents.

*Id*. (emphasis added). The taxpayer claiming a statutory exemption bears the burden of proving its entitlement to the exemption. *North Alamo Water Supply Corp.*, 804 S.W.2d at 899.

Based on a repealed law that exempted all packaging supplies from sales tax, de la Garza asserts that the definition of "wrapping, packing, and packaging supplies" in section 151.302(c) applies only to items used by manufacturers to transport products, not to grocery bags and sacks sold to retailers. *See* Act of August 8, 1961, 57th Leg., 1st C.S., ch. 24, 1961 Tex. Gen. Laws 71, 82, (codified 1981), *repealed by* Act of August 12, 1991, 72nd Leg., 1st C.S., ch. 5, § 14.12(3), 1991 Tex. Gen. Laws 134, 190.

Contrary to de la Garza's assertion, section 151.302(c) is not limited to packaging supplies used in the manufacturing industry. *See* Tex. Tax Code Ann. § 151.302(c). Its terms explicitly include "bags" as "wrapping, packing, and packaging supplies" that may not be purchased for resale. *Id.* Moreover, de la Garza's interpretation is not persuasive because another section of the tax code exempts packaging used in manufacturing from sales tax. *See id.* § 151.318(a), (d) (West Supp. 2004-05). If de la Garza's understanding were correct, then section 151.302(c) would be meaningless because all packing supplies would be tax exempt. An agency's construction of a statute is given serious consideration as long as its construction is reasonable and does not contradict the plain language of the statute. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002). We find that the Comptroller's construction of section 151.302(c)-(d) is reasonable and does not contradict the plain language of the statute. De la Garza's reliance on a repealed section of the tax code to defeat the applicability of section 151.302(c)-(d) is misplaced. We overrule de la Garza's first point of error.

6

**No Genuine Issue of Material Fact That Tax Exemption is Inapplicable**

De la Garza next argues that it was not notified when the Comptroller changed its interpretation of the tax law to include grocery bags and sacks within the definition of taxable packaging supplies. But after an act of the legislature becomes effective, it is considered to give notice of all its provisions. *Norton v. Kleberg County*, 231 S.W.2d 716, 718 (Tex. 1950).

De la Garza also claims that it did collect sales taxes on the bags that it sold to customers who lacked resale certificates. In support of this claim, de la Garza attached affidavits and receipts in appendices to its brief. Because the appended affidavits and receipts are not included in the record, we cannot consider them. *See, e.g.*, *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, no pet.) (appellate court cannot consider documents attached as appendices if they are not formally included in appellate record); *Adams v. Reynolds Tile & Flooring, Inc.*, 120 S.W.3d 417, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same).

De la Garza further argues that its acceptance of resale certificates from its customers in good faith should allow it to claim the sale-for-resale exemption. *See* Tex. Tax Code Ann. § 151.054(a)-(b) (West 2002). Section 151.054 includes a good faith component for a seller's acceptance of resale certificates from purchasers:

(a) Except as provided by Subsection (d) of this section, all gross receipts of a seller are presumed to have been subject to the sales tax unless a properly completed resale or exemption certificate is accepted by the seller.

(b) A sale is exempt if the seller receives in good faith from a purchaser, who is in the business of selling, leasing, or renting taxable items, a resale certificate stating that the tangible personal property or service is acquired for the purpose of selling, leasing, or renting it in the regular course of business or for the

purpose of transferring it as an integral part of a taxable service performed in the regular course of business.

*Id*.; *see also* 34 Tex. Admin. Code § 3.285(b)-(c). De La Garza contends that, although it did not collect sales taxes from customers who had provided it with blanket resale certificates, it acted in good faith because it received most of the resale certificates before 1991 and its sales on the blanket resale certificates were only a small percentage of its total sales.

Because de la Garza relies on affidavits that are not included in the record, we cannot consider them. *See, e.g.*, *Burke*, 169 S.W.3d at 775; *Adams*, 120 S.W.3d at 423. In any event, de la Garza's audit period began in January 1993, after section 151.302 had made the bags ineligible for resale. *See* Tex. Tax Code Ann. § 151.302(c)-(d). Furthermore, the Comptroller has ruled that if a previously valid resale certificate becomes facially invalid after a change in the law, that resale certificate cannot be accepted in good faith. Comptroller Decision No. 35,834, *available at* 1997 Tex. Tax LEXIS 95, at *8-9 (1997); http://aixtcp.cpa.state.tx.us/opendocs/open15/9701010h.html.

De la Garza does not challenge the fact that the 1991 change to section 151.302 that made de la Garza's bags ineligible for resale became effective before the audit period of January 1, 1993, through December 31, 1996. Nor did de la Garza include support in the record for its claim that it collected sales taxes on bags sold to customers without resale certificates and that it accepted previously valid resale certificates in good faith. Additionally, de la Garza did not address the Comptroller's ruling that resale certificates that become facially invalid after a change in the law cannot be accepted in good faith. Thus, de la Garza's arguments that it was not notified about the 1991 change in the tax code, that it collected taxes from other customers who lacked resale

8

certificates, and that it accepted the resale certificates in good faith do not raise a genuine issue of material fact showing its entitlement to the sale-for-resale exemption. We overrule de la Garza's second point of error.

**Relief Excluded From Order**

De la Garza's final argument is that the summary judgment order excluded relief it was due based on the Comptroller's admitted audit error, which the Comptroller had agreed to correct in the final order. De la Garza's counsel wrote to the Comptroller on December 11, 2000, advising of an error in de la Garza's audit. In a response letter dated January 8, 2001, the Comptroller acknowledged that the audit of January 1996 contained an incorrect double entry, resulting in an erroneous audited tax amount of $2,020.55, instead of $1,010.71.

After consulting with its deputy general counsel, the Comptroller agreed to "make this correction as part of the final order in the district court litigation." Nevertheless, the correction was omitted from the court's summary judgment order. We find that the Comptroller failed to include the correction of its auditing error in the summary judgment order in accordance with its agreement. Accordingly, we modify the judgment to include a correction of the Comptroller's January 1996 assessment against de la Garza, from $2,020.55 to $1,010.71.

## CONCLUSION

Having concluded that de la Garza did not raise a genuine issue of material fact on the applicability of the sale-for-resale exemption to its sales of grocery bags and sacks and that the Comptroller failed to note the correction of its auditing error in the summary judgment order, we

9

modify the judgment to include the correction of the Comptroller's audit error and, as modified, affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Modified and, as Modified, Affirmed

Filed:   November 10, 2005