# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00561-CV

**GTE Southwest Inc., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GU-05-001139, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The principal issue presented in this sales tax refund suit is whether the exemption for "tangible personal property" used in "manufacturing, processing, or fabrication of tangible personal property for ultimate sale" applies to equipment used by a local exchange carrier in providing a telecommunications product to customers that is taxed as a service. Concluding that the exemption is unavailable, the Comptroller denied the refund. The local exchange carrier—GTE Southwest Incorporated (GTE)—sued, and the district court granted summary judgment in favor of the Comptroller. GTE appeals. We will affirm the district court's judgment.

## BACKGROUND

GTE is a local exchange carrier. It operates "central offices" from which it receives, transmits, and delivers telecommunications to end users within a "local access and transport area"

(LATA). The local area which a central office network covers is often called a "wire center." Central office switches are connected to customer premises by a "local loop." Typically, the local loop ends with a pair of insulated copper wires connected to the end user's telephone.

To establish a connection with a customer's telephone, the central office converts energy that it receives from an electric utility—alternating current or "AC"—to -48 volt direct current or "DC," which it then applies to the local loop. When GTE's customer picks up the telephone handset, the DC circuit is complete. The central office switch recognizes the completed circuit and sends a dial tone to the customer.

Once the customer has dialed a telephone number, the central office switch receives the information, converts it to a digital address, and routes the call to its intended destination. If the intended destination is within the same wire center, the central office switch routes the call directly to the local loop of the receiver. If the intended destination is outside the wire center, the central office switch routes the call to other switches in the network. The central office switch then sends intermittent bursts of 105 volt AC to the receiver's telephone, causing it to ring.

GTE sought a sales tax refund for taxes it paid between January 1, 1995 through February 28, 1998 on equipment installed at various locations in Texas that it uses in providing its telecommunications product to customers. It relied on the manufacturing exemption of tax code section 151.318, asserting that the switches constituted "tangible personal property" used in the "manufacturing, processing, or fabrication of tangible personal property"—telecommunications signals. After the refund was denied, GTE filed suit and sought partial summary judgment limited

2

to its refund claims for switches used in its central offices. The Comptroller[1] countered with a cross-motion asserting that none of GTE's equipment qualified for the manufacturing and processing exemption. The district court granted the Comptroller's motion and denied GTE's. GTE appealed.

## ANALYSIS

In a single issue, GTE argues that the district court erred in its summary-judgment rulings because the manufacturing exemption applies to its equipment as a matter of law.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

When parties file cross-motions for summary judgment on overlapping issues and the trial court grants one motion and denies the other, an appellate court should review the summary-judgment evidence supporting both motions and determine all questions presented. *See*

---

[1] Because the interests of the Comptroller and the Attorney General in the litigation align, we will hereinafter refer to them collectively as the "Comptroller" when addressing their arguments on appeal. *See* Tex. Tax Code Ann. § 112.053 (West 2008) (requiring the Comptroller and the Attorney General to be named as defendants in suit brought pursuant to chapter 112 of the tax code).

*FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The appellate court "should render the judgment that the trial court should have rendered." *Id.*

Our review of the district court's summary-judgment rulings turns on construction of the tax code and the Comptroller's rules. Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

However, with regard to a statute that an agency is charged with enforcing, we give "serious consideration" to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language, and this is particularly true when the statute involves complex subject matter within the agency's area of expertise. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008); *cf. Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (courts "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise or deal with a nontechnical question of law"). Further, statutory exemptions from taxation—like the manufacturing and processing exemption—are "strictly construed" because "they undermine equality and uniformity

4

by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). The burden of proof for showing the exemption applies lies with the claimant. *See id.* An exemption must affirmatively appear in the statute, and all doubts are resolved in favor of the taxing authority. *See Bullock v. National Bankshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979). On the other hand, the concept that a tax exemption must be "strictly" construed "cannot be used as an excuse to stray from reasonableness." *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied). Likewise, "[a]lthough construction of exemption statutes is generally to be construed against the taxpayer, the overall scheme and intent of the legislation must not be overlooked." *Id.* at 161-62 (quoting *Idaho State Tax Comm'n v. Haener Bros.*, 828 P.2d 304, 307 (Idaho 1992)).

**Refund claim**

To meet its burden of proving that it is entitled to the refund because its equipment was not subject to sales tax, GTE relied on the manufacturing exemption found in section 151.318 of the tax code. Like other exemptions, the manufacturing exemption is an exception to the general rule that sales tax is imposed on any "sale" of a "taxable item" in the state. *See* Tex. Tax Code Ann. § 151.051(a) (West 2008).[2] There are two categories of "taxable items" on whose "sale" the sales tax is imposed: "tangible personal property" and "taxable services." *See id.* § 151.010 (West 2008). "Tangible personal property" is defined as "personal property that can be seen, weighed, measured,

---

[2] Where there has been no material intervening substantive change to a particular referenced tax code provision or rule, we will cite to the current version for convenience.

felt, or touched or that is perceptible to the senses in any other manner," including "a computer program and a telephone prepaid calling card," *see id*. § 151.009 (West 2008), while "taxable services" are defined to include certain specifically enumerated categories of services that the Comptroller is delegated exclusive jurisdiction to interpret. *See id*. § 151.0101 (West 2008). The manufacturing exemption, simply described, exempts a person who produces certain types of "tangible personal property" for sale to ultimate consumers from having to pay sales tax on its purchases of certain otherwise-taxable tangible personal property and taxable services that are used in the production process. *See Tyler Pipe Indus., Inc.*, 919 S.W.2d at 159, 161. Because such taxes, like other costs of production, would ordinarily be passed on in the product's sale price the ultimate consumer pays and on which sales tax is imposed, the manufacturing exemption serves "to avoid pyramiding the sales tax on successive buyers and sellers, which would result in the ultimate consumer paying sales tax on sales tax." *Id.* at 161. The exemption is also intended "to encourage economic development in this state" and "to strike a balance between the policy of avoiding multiple taxation and the need to raise revenue for the state." *Id.*

GTE relies on an exemption, codified in subsection (a)(2) of section 151.318, for tangible personal property used or consumed in "manufacturing," "processing," or "fabricating" "tangible personal property for ultimate sale." This exemption was amended during the refund period. Between the beginning of the refund period and the amendment's effective date—January 1, 1995 through October 1, 1997—the exemption applied to:

> tangible personal property used or consumed in or during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or

6

consumption of the property is necessary or essential to the manufacturing, processing, or fabrication operation . . . .

*See* Act of May 27, 1997, 75th Leg., R.S., ch. 1390, § 1, 1997 Tex. Gen. Laws 5195, 5195. For the remainder of the refund period—October 1, 1997 through February 28, 1998—the exemption applied to:

tangible personal property <u>directly</u> used or consumed in or during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary or essential to the manufacturing, processing, or fabrication operation <u>and directly makes or causes a chemical or physical change to</u> . . .

    (A)    <u>the product being manufactured, processed, or fabricated for ultimate sale; or</u>

    (B)    <u>any intermediate or preliminary product that will become an ingredient or component part of the product being manufactured, processed, or fabricated for ultimate sale</u> . . . .

*See id.* (codified as amended at Tex. Tax Code Ann. § 151.318(a)(2) (West 2008)) (changes emphasized).

As an initial matter, we observe that, as GTE acknowledges, both versions of the manufacturing exemption required that GTE have manufactured, processed, or fabricated "tangible personal property for ultimate sale"—i.e., tangible personal property that is sold to the ultimate consumer. GTE argues that the telecommunications product it sells its customers falls within the statutory definition of "tangible personal property." Specifically, GTE urges that its product consists of voice and data transmissions in the form of electronic signals, dial tones, busy signals, ring tone signals, digital addresses, and electricity used to power the system, all of which are "measured,"

7

"felt," and "perceptible." *See id*. § 151.009. It also emphasizes that the Comptroller has explicitly

defined electricity as "tangible personal property." *See* 34 Tex. Admin. Code § 3.295(b) (2005).

GTE additionally points to the legislative history of the sales tax statute as evidencing legislative

recognition that telecommunications signals are tangible personal property.

The Comptroller counters that telecommunications are not tangible personal property,

but taxable services. Consequently, the Comptroller reasons, the exemption—which requires the

ultimate sale of tangible personal property to customers—is unavailable. The Comptroller primarily

emphasizes the undisputed fact that sales tax is imposed on GTE's telecommunications product as

a service, not as "tangible personal property," because it falls within the definition of

"telecommunications services," one of the statutorily enumerated categories of taxable services. *See*

Tex. Tax Code Ann. §§ 151.009, .0103(a) (West 2008).[3] Because GTE's product is taxed as a

service rather than as tangible personal property, the Comptroller reasons, it follows that GTE does

not manufacture, process, or fabricate "tangible personal property for ultimate sale" within the

meaning of the manufacturing exemption. While acknowledging that "[e]lectricity and electric

signals may be tangible personal property in other contexts or in the abstract," the Comptroller urges

that "they are specifically defined as telecommunications services for this case" and that their status

as taxable services is mutually exclusive of their being considered tangible personal property under

the manufacturing exemption.[4]

---

[3] "Telecommunications services" are defined in relevant part to include "the electronic or electrical transmission, conveyance, routing, or reception of sounds, signals, data, or information utilizing wires." Tex. Tax Code Ann. § 151.0103(a) (West 2008).

[4] In arguing that GTE's product is a service rather than tangible personal property, the Comptroller also relies on the "essence-of-the-transaction" doctrine. However, as the Court

GTE challenges the Comptroller's view that the manufacturing exemption is unavailable if its product is taxed as a service rather than as tangible personal property. While recognizing that "tangible personal property must ultimately be sold" for the exemption to apply, GTE insists that "[t]he Tax Code contains no provision that would prevent telecommunications signals from being taxed as a service while being tangible personal property for purposes of the manufacturing exemption," and that "the statute does not preclude the tangible personal property from being sold as part of a taxable service." GTE cites several tax code provisions which, in its view, reflect legislative awareness that taxable services can also be tangible personal property or include components that are tangible personal property. GTE points out that, for example, the sale-for-resale exemption explicitly can apply to "[t]angible personal property used to perform a taxable service." Tex. Tax. Code Ann. § 151.301(a), (b) (West 2008); *see also id.* § 151.010(a)(7), (9), (12) (taxable services include credit reporting, insurance, and data processing),[5] § 171.1012(a)(2)(B) (West 2008) (specifically excluding "services" from "tangible personal property" in margins tax statute).[6] Given that the legislature was aware that taxable services could also be tangible personal

recently held, the essence-of–the-transaction doctrine applies solely to "mixed transaction" situations involving both taxable and nontaxable elements. *7-Eleven, Inc. v. Combs*, No. 03-08-00212-CV, ___ S.W.3d ___, 2010 Tex. App. LEXIS 3001, at *30-36 (Tex. App.—Austin Apr. 22, 2010, no pet. h.).

[5] In fact, Comptroller acknowledged that these categories of taxable services "may involve some transfer of tangible personal property."

[6] In further support of its position regarding the relationship between taxable services and tangible personal property, GTE cites this Court's decision in *May Dep't Stores Co. v. Strayhorn*, No. 03-03-00729-CV, 2004 Tex. App. LEXIS 7681 (Tex. App.—Austin Aug. 26, 2004, pet. denied), in which we held that printing services are taxable even though printing is not defined as a taxable service because printing is tangible personal property. However, as GTE recognizes, printing, unlike telecommunications, has not been defined as a taxable service. *May*, consequently, did not address

9

property or include it, GTE suggests, the manufacturing exemption's requirement that the person manufacture, process, or fabricate "tangible personal property for ultimate sale" does not preclude the exemption's application when its telecommunications product is ultimately taxed as a service, so long as the product or its components also falls within the statutory definition of tangible personal property. And applying the exemption here, GTE adds, would advance its underlying policies by preventing double taxation on the costs of its equipment that are reflected in the sale price paid by customers for its telecommunications product.

Resolution of these competing contentions ultimately turns on the meaning of the section 151.318(a)(2)'s phrase "tangible personal property for ultimate sale" (i.e., what the taxpayer manufactures, processes, or fabricates). In GTE's view, "tangible personal property for ultimate sale" requires only that the telecommunications product it sells to customers, while taxed as a service, also falls within the definition of "tangible personal property" or has components that do. The Comptroller, on the other hand, suggests that "tangible personal property for ultimate sale" limits the exemption to the manufacturing, processing or fabrication of products whose ultimate sale is taxed as "tangible personal property," thus excluding products taxed as services. Considering the text, structure, and intent of the exemption, we are ultimately persuaded that the Comptroller's view is correct.

In the context of the sales tax statute, the phrase "tangible personal property for ultimate sale" denotes a product manufactured, processed, or fabricated in anticipation of a specific

---

the extent to which a product's status as a taxable service is exclusive of its status as tangible personal property for manufacturing exemption purposes or otherwise.

10

type of taxable transaction—the "sale" of "tangible personal property." *See* Tex. Tax Code Ann. §§ 151.009, .010, .051(a). This usage is consistent with a legislative intent to prevent double taxation in the context of those specific transactions—i.e., ensuring that the sales tax imposed on the "sale" of the "tangible personal property" product is not "pyramided" on sales tax imposed on tangible personal property used or consumed in making that product. This usage is also inconsistent with legislative intent that the exemption apply when the end product is taxed as a service. Although GTE is correct that the exemption's underlying policies would be advanced to some extent if the exemption was extended to inputs used in providing taxable services, the legislature, significantly, did not mention the sale of taxable services within the exemption— only "tangible personal property for ultimate sale." *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied) (we presume that the legislature acted purposefully in choosing to include or exclude words from a statute). And, if the legislature intended for the exemption to be extended to "tangible personal property" included in a taxable service, notwithstanding its reference to "tangible personal property for ultimate sale," it presumably would have said so more explicitly. *Cf.* Tex. Tax. Code Ann. § 151.301(a), (b) (sale-for-resale exemption applies to "[t]angible personal property used to perform a taxable service.").

The Comptroller's construction of the exemption is reasonable and not inconsistent with the statutory text; indeed, it finds support in the statutory text. Consequently, we have given this construction serious consideration. *See First Am. Title Ins. Co.*, 258 S.W.3d at 632. Strictly but reasonably construing the exemption in light of its text and underlying purposes, *see North Alamo Water Supply Corp.*, 804 S.W.2d at 899; *National Bankshares Corp.*, 584 S.W.2d at 272; *Tyler Pipe*

11

*Indus., Inc.*, 919 S.W.2d at 161, we conclude that GTE is not entitled to the exemption here. Accordingly, the district court did not err in granting summary judgment on GTE's refund claim. We need not reach the parties' remaining contentions regarding whether, assuming GTE's telecommunications product is "tangible personal property for ultimate sale" under the exemption, it "manufactured," "processed," or "fabricated" it. We overrule GTE's issue.

## CONCLUSION

Having overruled GTE's sole issue on appeal, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: June 3, 2010