**AMERICAN HOUSING FOUNDATION
and Brandywood Housing, Ltd.,
Appellants,**

v.

**HARRIS COUNTY APPRAISAL
DISTRICT, Appellee.**

No. 14–07–00990–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 19, 2009.

John Ben Blanchard, Christopher L. Jensen, Andrew Gregory Little, Amarillo, for appellants.

Kenneth Wall, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and HUDSON.[*]

## OPINION

KEM THOMPSON FROST, Justice.

A Texas limited partnership that holds title to an apartment complex and the non-profit corporation that owns the general partner of the limited partnership appeal the trial court's summary judgment rejecting their claims that the complex is entitled to property tax exemptions under section 11.182 of the Texas Tax Code. These entities assert on appeal that subsection (e) of that section applies to housing projects constructed before December 31, 2001, and that this section extends tax-exempt status to property that would not be exempt under subsection (b) of that section. Concluding that these arguments lack merit, we affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the issue of whether the purported owners of the Brandywood Apartments (hereinafter "Apartments") are entitled to an exemption from property taxes under section 11.182 of the Texas Tax Code[1] during tax years 2002 and 2003. The apartment complex is a low-and-moderate-income housing project in Harris County, Texas. The following facts

---

[*] Senior Justice Harvey Hudson sitting by assignment.

[1]. Unless otherwise stated, all statutory references in this opinion are to the Texas Tax Code, and all references to subsections are references to subsections of section 11.182 of the Texas Tax Code.

relevant to the exemptions for these two tax years are undisputed. The Apartments were constructed before December 31, 2001. Appellant American Housing Foundation (hereinafter "American") was a Texas non-profit corporation and a Community Housing Development Organization ("CHDO"). American was the sole shareholder of Brandywood Apartments, Inc., a Texas corporation ("Brandywood"). Brandywood owned 1% of and was sole general partner of Brandywood Housing, Ltd., a Texas limited partnership (hereinafter "Housing"). Housing was the holder of title to the property on which the Apartments are located. An unrelated entity was the limited partner in Housing and owner of a 99% interest in Housing.

As to tax years 2002 and 2003, Brandywood and Housing (hereinafter collectively "Claimants") sought an exemption from property tax for the Apartments under section 11.182. Appellee Harris County Appraisal District (hereinafter the "District") denied Claimants' requests for exemption. Claimants protested this determination before the appropriate appraisal review board, which also denied the requests for exemption. Claimants then sought review in the district court below and also sought declarations under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem.Code § 37.001, *et seq.* (Vernon 2008).

In its motion for summary judgment, the District asserted that summary judgment should be granted because:

(1) Under subsection (b), to be entitled to an exemption, the organization that owns the property must be a CHDO. However, Housing, the titleholder to the property in question, is not a CHDO, and, though American is a CHDO, it owns only a 1% interest in Housing.

(2) Claimants assert that, even though they are not entitled to an exemption under subsection (b), they are entitled to an exemption under subsection (e). However, subsection (e) applies only to housing projects built after December 31, 2001, and the Apartments were built before December 31, 2001.

The Claimants filed a motion for summary judgment asserting that subsection (e) applies to housing projects constructed both before and after December 31, 2001, and that section 11.182(e) extends the scope of the exemption available under section 11.182 so as to allow Claimants to obtain the exemption because the CHDO owns 100% of Brandywood (the general partner of the titleholder) and because American satisfies the applicable requirements of section 11.182. The trial court denied Claimants' motion and granted the District's motion. The Claimants appeal the trial court's final summary judgment.

## II. Issues Presented

The Claimants assert the following appellate issues:

(1) Whether section 11.182 allows limited partnerships to claim a property tax exemption under the specific requirements of subsection (e).

(2) Whether subsection (e) applies to properties constructed both before and after December 31, 2001.

(3) Whether the trial court erred in failing to grant the Claimants' motion for summary judgment.

## III. Standard of Review

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue suffi-

cient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007).

## IV. RELEVANT STATUTE

In pertinent part, section 11.182 provides as follows:

(a) In this section:

. . .

(2) "Community housing development organization" has the meaning assigned by 42 U.S.C. Section 12704.

(b) An *organization* is entitled to an exemption from taxation of improved or unimproved real property *it owns* if the *organization:*

(1) is organized as a community housing development organization;

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);

(3) *owns* the property for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.

(c) Property owned by the organization may not be exempted under Subsection (b) after the third anniversary of the date the organization acquires the property unless the organization is offering to rent or is renting the property without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements.

(d) A multifamily rental property consisting of 36 or more dwelling units owned by the organization that is exempted under Subsection (b) may not be exempted in a subsequent tax year unless in the preceding tax year the organization spent, for eligible persons in the county in which the property is located, an amount equal to at least 40 percent of the total amount of taxes that would have been imposed on the property in that year without the exemption on social, educational, or economic development services, capital improvement projects, or rent reduction. This subsection does not apply to property acquired by the organization using tax-exempt bond financing after January 1, 1997, and before December 31, 2001.

(e) *In addition to meeting the applicable requirements of Subsections (b) and (c), to receive an exemption under Subsection (b)* for improved real property that *includes* a housing project *constructed after December 31, 2001,* and financed with qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of 1986, tax-exempt private activity bonds subject to volume cap, or low-income housing tax credits, the organization must:

(1) *control 100 percent* of the interest in the general partner *if the pro-*

*ject is owned by a limited partnership;*

(2) comply with all rules of and laws administered by the Texas Department of Housing and Community Affairs applicable to community housing development organizations; and

(3) submit annually to the Texas Department of Housing and Community Affairs and to the governing body of each taxing unit for which the project receives an exemption for the housing project evidence demonstrating that the organization spent an amount equal to at least 90 percent of the project's cash flow in the preceding fiscal year as determined by the audit required by Subsection (g), for eligible persons in the county in which the property is located, on social, educational, or economic development services, capital improvement projects, or rent reduction.

TEX. TAX CODE ANN. § 11.182 (Vernon 2008) (emphasis added).

 The principal issues in this appeal turn on the interpretation of this statute. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must

yield to the plain sense of the words the legislature chose. *See id.* Legislative intent is gleaned from the statute as a whole, and statutes are interpreted to give effect to every part of the whole. *State ex rel. State Dep't of Highways & Public Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002).

 Exemptions from taxation are not favored by the law and will not be favorably construed. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.,* 804 S.W.2d 894, 899 (Tex.1991). Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally. *Id.* Accordingly, the burden of proof of clearly showing that the organization falls within the statutory exception is on the claimant seeking the exemption. *Id.*

### V. ANALYSIS

### A. Does subsection (e) expand the category of properties that are entitled to exemption under subsection (b)?

 In their first issue, Claimants assert that subsection (e) modifies subsection (b) to expand the availability of exemptions to properties owned by certain limited partnerships that previously had been ineligible for the exemption under subsection (b). Under their first issue, Claimants argue the following points:

- To be entitled to an exemption under subsection (b), the organization that owns the property, among other things, must be a CHDO.

- Housing, the holder of title to the property on which the Apartments are located, is a Texas limited partnership.

- As a matter of law, Texas limited partnerships can never be CHDOs; therefore, Housing is not a CHDO.

- Because Housing is not a CHDO, the Claimants cannot be entitled to an exemption under subsection (b), absent an equitable title argument which Claimants state "is not directly at issue in this appeal."

- By adding subsection (e), effective January 1, 2002, the Texas Legislature expanded the exemption available under subsection (b) and made it available to a new group of owners—owners who are limited partnerships (and thus do not satisfy the requirements of subsection (b)) but whose respective general partners are 100% owned by organizations that satisfy the requirements of subsections (b),(c), and (e).

- The phrase "applicable requirements of Subsections (b) and (c)," as used in subsection (e) means that, an owner who is a limited partnership is required to satisfy only the requirements of subsections (b) and (c) that a limited partnership is capable of satisfying. If this construction is not adopted, then subsection (e) is rendered meaningless, because subsection (e) contemplates that an exemption may be obtained when the property is owned by a limited partnership.

- American owns 100% of Housing's sole general partner. American satisfies all "applicable requirements" of subsections (b), (c), and (e). Therefore, Claimants are entitled to an exemption under subsection (e).

The Texas Legislature added subsection (e) effective January 1, 2002. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1191, § 1, 2001 Tex. Gen. Laws 2694, 2695–96. In making this addition to the statute, the Texas Legislature, in pertinent part, stated that "[i]n addition to meeting the applicable requirements of Subsections (b) and (c), to receive an exemption under Subsection (b) ... the organization must ...

control 100 percent of the interest in the general partner if the project is owned by a limited partnership." Under its unambiguous language, subsection (e) imposed additional requirements beyond the applicable requirements of subsections (b) and (c). In subsection (e), the Texas Legislature did not create a new exemption or expand the exemption that already existed under subsection (b). Instead, to the extent that subsection (e) applies, it adds new requirements that must be satisfied to obtain the exemption provided under subsection (b). *See* Tex. Tax Code Ann. § 11.182; *Jim Wells County Appraisal Dist. v. Cameron Village, Ltd.*, 238 S.W.3d 769, 773–75 (Tex.App.-San Antonio 2007, pet. filed); *TRQ Captain's Landing L.P. v. GCAD*, 212 S.W.3d 726, 735 (Tex.App.-Houston [1st. Dist.] 2006, pet. granted). To adopt Claimants' construction would render meaningless the words "in addition to" and "to receive an exemption under Subsection (b)."

If the property in question has been owned by the same organization for more than three years, then, under subsection (c), the property may not be exempted under subsection (b), unless the organization is offering to rent or is renting the property without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements. *See* Tex. Tax Code Ann. § 11.182(c). This requirement applies to organizations that have owned the property for more than three years but not to organizations that have owned the property for less than three years. *See id.* The unambiguous meaning of "applicable requirements of Subsections (b) and (c)" is the requirements of subsections (b) and (c) that apply to the organization in question. *See id.* § 11.182; *Cameron Village, Ltd.*, 238 S.W.3d 769, 775–76. However, under subsection (b), the Texas Legislature re-

quired all owners to be CHDOs to be eligible for an exemption under subsection (b), and therefore, the requirement that the organization that owns the property be a CHDO is applicable to all organizations. *See Cameron Village, Ltd.*, 238 S.W.3d 769, 775–76. The Claimants' proffered construction of the phrase "applicable requirements of Subsections (b) and (c)" is contrary to that phrase's plain meaning. *See id.*

■ As Claimants point out, the language of subsection (e) indicates that property may be exempted under subsection (b), even though the titleholder to the property is a limited partnership, which would not be a CHDO or a charitable organization. Nonetheless, this language is not rendered meaningless by this court's failure to adopt Claimants' proffered construction. This language has meaning if, as the First Court of Appeals has held, a charitable organization that is a CHDO, that satisfies the applicable requirements of subsections (b) and (c), and that is the equitable owner of the property can be considered to "own" the property within the meaning of subsection (b). *See* TEX. TAX CODE ANN. § 11.182(b); *Harris County Appraisal District v. Primrose Houston 7 Housing, L.P.*, 238 S.W.3d 782, 786–88 (Tex.App.-Houston [1st Dist.] 2007, pet. filed); *TRQ Captain's Landing L.P.*, 212 S.W.3d at 732–36. Claimants did not as-

sert in the trial court that American is the equitable owner of the Apartments. Though they did make this assertion in their reply brief on appeal, they did not make this argument in their opening appellate brief. Therefore, Claimants have waived the contention that they qualify for the exemptions because American is the equitable owner.[2] For the reasons stated above, Claimants' arguments under their first issue are contrary to the unambiguous language of section 11.182 and lack merit. Accordingly, we overrule the first issue.

**B. Does section 11.182(e) apply even though the Apartments were constructed before December 31, 2001?**

■ In their second issue, Claimants assert that subsection (e) applies to housing projects constructed both before and after December 31, 2001. Under their second issue, Claimants argue as follows:

- Under the Code Construction Act and common law, unless the statute or context in which "includes" is used require otherwise, "includes" is a term of enlargement and not of limitation or exclusive enumeration, and its use does not create a presumption that components not expressed are excluded. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005).

**2.** *See* TEX.R.APP. P. 38.3; *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). In any event, even if Claimants had not waived this issue, the undisputed evidence shows that (1) American owns Brandywood; (2) Brandywood owns only 1% of Housing; and (3) an entity unrelated to American owns a 99% interest in Housing. Under the undisputed facts, American would not qualify as the equitable owner of the Apartments. *See Primrose Houston 7 Housing, L.P.*, 238 S.W.3d at 786–88 (holding that the CHDO was not equitable owner under subsection (b) because it did not

have the present right to compel legal title given that, though it owned 100% of the general partnership in the limited partnership that held title, the CHDO owned only a .01% interest in the limited partnership); *TRQ Captain's Landing L.P.*, 212 S.W.3d at 732–36 (holding that American Housing Foundation could be considered the equitable owner of the property under subsection (b) because it had the present right to compel legal title given that, through its wholly-owned subsidiary, American owned 100% of the limited partnership that held title to the land).

- The Texas Legislature intended subsection (e) to apply to exemptions for the 2002 tax year as to housing projects that were under construction on January 1, 2002, but not completed on that date. Therefore, the Texas Legislature stated that subsection (e) applies to "improved real property that includes a housing project constructed after December 31, 2001."
- To give effect to the meaning of "includes" under the Code Construction Act and common law, courts should construe subsection (e) to apply to housing projects constructed both before and after December 31, 2001.
- The significance that the Texas Legislature attributed to capital improvements under subsection (e)(3) indicates that the Texas Legislature intended subsection (e) to apply to housing projects constructed before January 1, 2002. The fact that subsection (e)(3) allows 90% of the project's cash flow in the previous fiscal year to be spent on capital improvement projects strongly indicates that the Texas Legislature intended subsection (e) to apply to projects completed before January 1, 2002.
- It would be arbitrary to construe subsection (e) to apply only to projects constructed after December 31, 2001 and not to projects constructed before December 31, 2001 and repaired after that date.

As discussed above, the Texas Legislature enacted subsection (e) to be effective January 1, 2002 and to impose additional requirements that must be satisfied to obtain an exemption under subsection (b), beyond the applicable requirements of subsections (b) and (c). In subsection (e), the Texas Legislature did not create a new exemption or expand the exemption that already existed under subsection (b). In addressing the second issue, we must decide whether subsection (e) applies to housing projects, such as the Apartments, that were constructed before December 31, 2002. In the pertinent part of subsection (e), the Texas Legislature stated that "[i]n addition to meeting the applicable requirements of Subsections (b) and (c), to receive an exemption under Subsection (b) for improved real property that includes a housing project constructed after December 31, 2001 ... the organization must. . . ." Under its unambiguous language, subsection (e) sets forth additional requirements for parties seeking an exemption under subsection (b) for improved real property that has upon it a housing project constructed after December 31, 2001; if the real property includes a housing project constructed before December 31, 2001, then subsection (e) does not apply. *See* TEX. TAX CODE ANN. § 11.182(e); *Cameron Village, Ltd.*, 238 S.W.3d at 774; *TRQ Captain's Landing L.P.*, 212 S.W.3d at 735–36; *Am. Housing Foundation v. Calhoun County Appraisal Dist.*, 198 S.W.3d 816, 818–19 (Tex.App.-Corpus Christi 2006, pet. denied); *Am. Housing Foundation v. Brazos County Appraisal Dist.*, 166 S.W.3d 885, 888–89 (Tex.App.-Waco 2005, pet. denied). Contrary to Claimants' arguments, the intent expressed in the unambiguous language selected by the Texas Legislature was not to have subsection (e) apply regardless of when the housing project was constructed and to simply clarify that subsection (e) applies to housing projects in which construction began before January 1, 2002 and was completed after that date. Adopting Claimants' proffered construction would render meaningless the words "constructed after December 31, 2001." *See Am. Housing Foundation*, 198 S.W.3d at 819.

The Code Construction Act and common law upon which Claimants rely state the rule that "includes" and "including," unless the context shows otherwise, do not indicate a limitation or exclusive enumeration. For example, the phrase, "motions, including motions for summary judgment," does not limit the motions in question to only motions for summary judgment. Claimants' argument proceeds as if, in subsection (e), the Texas Legislature had used the words "to receive an exemption under Subsection (b) for real property, including improved real property upon which a housing project was constructed after December 31, 2001." However, the Texas Legislature did not choose this language. Instead, in subsection (e), the clause "that includes a housing project constructed after December 31, 2001" modifies "improved real property." The word "includes" is not used in an exclusive sense; the improved real property can include elements other than a housing project constructed after December 31, 2001. *See Am. Housing Foundation,* 198 S.W.3d at 818–19. Nonetheless, the Texas Legislature chose to make the additional requirements of subsection (e) applicable prospectively and only to organizations seeking an exemption under subsection (b) for improved real property that includes a housing project constructed after December 31, 2001. Construing subsection (e) in this manner accords with the Code Construction Act and common law. *See* TEX. GOV'T CODE ANN. § 311.005(13); *Am. Housing Foundation,* 198 S.W.3d at 818–19.

Claimants assert that the requirement contained in subsection (e)(3) shows that the Texas Legislature intended subsection (e) to apply to housing projects completed before January 1, 2002. Under subsection (e)(3), the organization must "submit annually . . . evidence demonstrating that the organization spent an amount equal to at least 90 percent of the project's cash flow in the preceding fiscal year . . . for eligible persons in the county in which the property is located, on social, educational, or economic development services, capital improvement projects, or rent reduction." TEX. TAX CODE ANN. § 11.182(e)(3). This language does not indicate that subsection (e) applies to housing projects completed before January 1, 2002. This part of the statute requires the organization to show that 90% of the project's cash flow in the preceding fiscal year was used for one of five different items, only one of which is capital improvement projects. *See id.* An organization could comply with this requirement without using any of the housing project's cash flow in the preceding fiscal year for capital improvement projects. *See id.* The fact that an organization could satisfy this requirement by using 90% of its housing project's cash flow in the preceding fiscal year for capital improvement projects does not show that the Texas Legislature intended subsection (e) to apply to housing projects completed before January 1, 2002.

Claimants also point out that subsection (b)(3) includes organizations that "own[ ] the property for the purpose of . . . *repairing* housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family." *Id.* § 11.182(b)(3) (emphasis added). Claimants assert that it would be arbitrary and unreasonable to construe subsection (b) as applying only to repairs to housing constructed after January 1, 2002, because this construction would eliminate the subsection (b) exemption for housing projects involving repairs unless the project had been constructed after January 1, 2002. This argument lacks merit. If subsection (e) applies, then the organization must satisfy additional requirements. If subsec-

tion (e) does not apply, no exemption under subsection (b) is thereby eliminated. It is neither arbitrary nor unreasonable for the Texas Legislature to have chosen to apply the additional restrictions in subsection (e) only to housing projects completed after December 31, 2001, which would include both projects constructed after this date and repairs to projects constructed after this date. Because the Apartments are not a housing project in this category, subsection (e) does not apply to the Apartments or to Claimants' attempts to obtain an exemption for the real property on which the Apartments were constructed.

For the reasons stated above, Claimants' arguments under their second issue are contrary to the unambiguous language of section 11.182 and lack merit. Accordingly, we overrule the second issue.

## C. Did the trial court err in denying Claimants' motion for summary judgment?

In their third issue, Claimants assert the trial court erred in denying their motion for summary judgment for all the same reasons given by Claimants as to why the trial court purportedly erred in granting the District's motion for summary judgment. As discussed above, we have concluded that these reasons lack merit. Accordingly, we overrule Claimants' third issue.

## VI. CONCLUSION

Under its unambiguous language, subsection (e) imposes additional requirements that must be satisfied beyond the applicable requirements of subsections (b) and (c). In subsection (e), the Texas Legislature did not create a new exemption or expand the exemption that already existed under subsection (b). Under the unambiguous language selected by the Texas Leg-

islature, subsection (e) applies only to improved real property upon which a housing project was constructed after December 31, 2001. Because the trial court did not err in granting the District's motion for summary judgment and denying Claimants' motion, we affirm the trial court's judgment.