**Affirmed and Memorandum Opinion filed June 6, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01038-CV

---

### HARVEST LIFE FOUNDATION, FKA OPERATION REACH COMMUNITY DEVELOPMENT CORPORATION, Appellant

### V.

### HARRIS COUNTY APPRAISAL DISTRICT, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2010-07975**

---

## MEMORANDUM OPINION

Appellant, Harvest Life Foundation, fka Operation Reach Community Development Corporation ("Harvest Life") appeals the portion of a judgment denying Harvest Life's request for tax exemptions for certain real property. In two issues, Harvest Life contends the trial court erred by (1) admitting supplemental

evidence after the close of trial, and (2) denying Harvest Life's request for the exemptions. We affirm.

## I. BACKGROUND

Harvest Life applied for exemptions for two tracts of property for tax years 2007-2009 and seven tracts for tax years 2008-2009 on the ground that the properties were used for charitable purposes. *See generally* Tex. Tax Code Ann. § 11.18(a) (West Supp. 2012) (providing that "An organization that qualifies as a charitable organization is entitled to an exemption from taxation of" certain property "owned by the charitable organization" and "used exclusively by qualified charitable organizations"). Harris County Appraisal District ("HCAD") denied each application. The Appraisal Review Board for the Harris County Appraisal District ("the ARB") denied Harvest Life's protest. Harvest Life filed the present suit seeking de novo review of HCAD's decision. *See generally id.* §§ 42.21–.30 (West 2008 & Supp. 2012).

On April 5, 2011, the trial court conducted a bench trial. The evidence presented by Harvest Life focused on several subsections of article 11.18(d), which provides that, for qualification, a charitable organization must, among other requirements, "engage exclusively in performing one or more of the following charitable functions" and then lists such functions. *Id.* § 11.18(d) (West Supp. 2012). Pertinent to this appeal, one such function (under the former version of the statute, applicable to this case) was "providing halfway house services pursuant to a certification as a halfway house by the pardons and paroles division of the Texas Department of Criminal Justice ["TDCJ"]." Act of May 22, 2001, 77th Leg., R.S.,

2

ch. 1420, § 18.001, 2001 Tex. Gen. Laws 4210, 4548 (amended 2009) (current version at Tex. Tax Code Ann. § 11.18(d)(12) (West Supp. 2012)).[1]

At the close of evidence, HCAD argued that Harvest Life failed to present evidence that any of the properties were certified as a halfway house by the pardons and paroles division of TDCJ—the exemption for which Harvest Life applied—and HCAD had presented a page from the TDCJ's website showing Harvest Life was not one of seven certified halfway houses in Texas. Harvest Life argued that (1) the certification question was irrelevant because Harvest Life proved that all tenants at each property satisfied at least one other subsection of article 11.18(d); and (2) Harvest Life satisfied subsection (d)(12).

The trial court inquired whether it was confined to considering only subsection (d)(12). HCAD asserted that, under the exhaustion-of-remedies principle, Harvest Life was required to prove the exemption for which it applied and was denied. HCAD presented a pre-trial stipulation signed by the parties and argued they agreed therein that only subsection (d)(12) was at issue. Harvest Life disagreed with HCAD's characterization of the stipulation.

The trial court commented that it would "overlook" the stipulation because it was not a clear agreement that trial was confined to subsection (d)(12). The trial court re-opened the evidence to review Harvest Life's applications, which had not been offered. Harvest Life presented part of its application for tax year 2009 and represented that all applications were the same. Based on this application, the trial court ruled that the exemption issue was not confined to subsection (d)(12) but stated that the parties were free to present additional evidence and briefing on that

---

[1]  In 2009, subsection (d)(12) was amended to replace the language "pardons and paroles division" with "parole division." *See* Tex. Tax Code Ann. § 11.18(d)(12). The former version applies to this case because the change is effective for tax years beginning January 1, 2010. *See id.* All references hereinafter to article 11.18(d)(12) are to the former version.

point. The trial court announced that, based on the evidence already presented, but subject to further briefing, it would find the properties were used for charitable functions, as defined under the statute, for all relevant years and grant the exemptions.

Subsequently, HCAD filed supplemental exhibits, consisting of the complete applications for tax years 2007-2009, and additional briefing. In its responses, Harvest Life objected to the filing of supplemental evidence. On August 19, 2011, the trial court conducted another hearing and admitted the supplemental evidence.

On September 1, 2011, the trial court signed a final judgment granting the exemption for one tract for 2007 and 2008 but denying all other requested relief. The trial court subsequently issued written findings of fact and conclusions of law. With respect to the relief denied, the trial court found that Harvest Life applied for exemptions for each tract for the relevant tax year on the ground the tract was primarily used as "a halfway house for men who were recently released from jail or prison" or "transitional housing for ex-offenders thru [TDCJ] parole office." The trial court further concluded, "[a]lthough [the Harvest Life representative] testified that [Harvest Life] was designated as a halfway house by [TDCJ] since approximately 2006, Harvest Life was not listed on [TDCJ's] website as one of seven (7) such facilities in the state."[2]

Harvest Life filed a motion for new trial. At the conclusion of a hearing, the trial court orally announced it denied the motion for new trial.

---

[2] With respect to the exemptions granted for one tract, the trial court found Harvest Life applied for, and was entitled to, an exemption under subsection (d)(2) for 2007 and 2008. HCAD does not appeal that portion of the judgment.

4

## II. ANALYSIS

In two issues, Harvest Life contends the trial court erred by (1) admitting the supplemental evidence, and (2) denying Harvest Life's request for the exemptions even if the trial court were permitted to consider the supplemental evidence.

### A.      Admission of Supplemental Evidence

Under Texas Rule of Civil Procedure 270, "[w]hen it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex. R. Civ. P. 270. The decision to reopen the evidence is within the sound discretion of the trial court. *In re Hawk*, 5 S.W.3d 874, 876–77 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In deciding whether to exercise this discretion, the court may consider a number of factors, including (1) the diligence of a party in presenting its evidence, (2) whether reopening the evidence will cause undue delay, (3) whether reopening the evidence "will do an injustice," and (4) whether the evidence to be introduced is decisive. *Id.* at 877. The trial court should exercise its discretion liberally "in the interest of permitting both sides to fully develop the case in the interest of justice." *Id.*

Harvest Life does not expressly cite the above-listed factors. However, we will consider the factors because some of Harvest Life's arguments fit within an analysis under the factors. The factors support the trial court's decision to admit the supplemental evidence.

### *HCAD's diligence in presenting its evidence*

Harvest Life asserts that HCAD sought to present the supplemental evidence as "a last ditch effort to save the case" because it had lost and HCAD should have

5

presented the evidence at the original trial. However, Harvest Life misconstrues the events leading to presentation of the supplemental evidence. As HCAD represented to the trial court, it believed the parties had a stipulation that Harvest Life was claiming only the halfway-house exemption under subsection (d)(12) and trial was confined to that issue. Thus, HCAD had no reason to present the applications because it did not dispute that Harvest Life had exhausted its administrative remedies before seeking trial de novo in district court.

Once Harvest Life argued that there was no such stipulation and it satisfied other exemptions, the trial court set aside the stipulation so that it could determine whether Harvest Life had claimed the other exemptions. Although the trial court found the stipulation did not reflect a clear agreement to confine trial to subsection (d)(12), the trial court had discretion to conclude that at least HCAD's interpretation of the agreement was reasonable. In the stipulation, the parties agreed, "[Harvest Life] timely filed and completed application for a charitable organization property tax exemption with [HCAD] for each of the following properties and tax years pursuant to Texas Property Tax Code 11.18(d)(12)." There were two reasonable, alternative interpretations of the stipulation: that subsection (d)(12) was the only exemption for which Harvest Life applied; or alternatively, Harvest Life applied under subsection (d)(12), but it was not the only exemption claimed. Thus, the trial court acted within its discretion by concluding there was no lack of diligence on HCAD's part in failing to present the applications at trial.

Once the trial court set aside the parties' stipulation so that it could determine what exemption[s] were claimed by Harvest Life on its applications, Harvest Life presented only part of one application—the first three pages of a 2009 application, which inquired generally about the organization and its functions.

6

Harvest Life did not present the attached schedules for each property at issue, inquiring about the "primary use of" that property. Harvest Life did not present any of the applications for 2007 and 2008. Under the Rule of Optional Completeness, the trial court had discretion to permit HCAD to offer all the complete applications to accurately demonstrate what exemption[s] were claimed therein. *See* Tex. R. Evid. 107 (stating, "When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence . . . .").

### *Whether reopening the evidence will cause undue delay*

Harvest Life does not contend, and there is no indication, that reopening the evidence had any potential to cause undue delay.

### *Whether reopening the evidence "will do an injustice"*

Harvest Life presents several arguments which we construe as encompassed within this factor.

First, Harvest Life contends that admission of the supplemental evidence violated Tax Code section 42.23(a), which provides that judicial review of a decision of the ARB "is by trial de novo." Tex. Tax Code Ann. § 42.23(a). Harvest Life suggests it was deprived of its due process right to a trial de novo by the trial court's failure to consider only the evidence presented at the original trial. However, section 42.23(a) also provides, "The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *Id.* Accordingly, the requirement that a trial de novo be conducted encompasses application of all relevant procedural rules, including Rule 270 which

permits supplemental evidence, in the trial court's discretion. *See id.*; Tex. R. Civ. P. 270. In short, the supplemental evidence **was** part of the trial de novo mandated by section 42.23(a) because it was properly admitted pursuant to Rule 270.

Next, in an interrelated argument, Harvest Life also cites *National Pipe and Tube Co. v. Liberty County Central Appraisal District*, 805 S.W.2d 593, 597 (Tex. App.—Beaumont 1991, writ denied), holding that the trial court erred by reviewing the weight and sufficiency of the evidence presented to the ARB to support its decision on a tax protest instead of conducting a trial de novo. Additionally, section 42.23(b) provides, "The court may not admit in evidence the fact of prior action by the appraisal review board or comptroller, except to the extent necessary to establish its jurisdiction." Tex. Tax Code Ann. § 42.23(b). Harvest Life fails to show how the trial court's decision to reopen the evidence constituted an impermissible review of the ARB's decision, rather than a trial de novo, or a prohibited admission of "the fact of prior action" by the ARB other than for jurisdictional purposes. The record demonstrates the trial court did not review the ARB's decision and instead conducted a trial de novo review on whether Harvest Life was entitled to an exemption. By admitting the supplemental evidence, the trial court merely determined what particular exemption was claimed in the applications so that it could conduct a de novo review on the exemption for which Harvest Life had exhausted its remedies.

Finally, Harvest Life argues that it was not afforded an opportunity to challenge authenticity or "the merits" of the supplemental evidence or challenge admission on other grounds such as "relevance, unfair surprise, etc." We disagree. HCAD submitted the supplemental evidence approximately four months before the trial court convened the supplemental trial. Harvest Life filed responses to HCAD's supplemental filings. Harvest Life devoted its responses to arguing that

supplemental evidence should not be permitted at all. However, nothing precluded Harvest Life from alternatively challenging admission on various evidentiary grounds.[3] When the trial court announced at the supplemental trial that it was making the supplemental evidence part of the record, Harvest Life did not request an opportunity to present objections to the evidence. Then, the trial court entertained arguments on whether the supplemental evidence showed the applications were confined to subsection (d)(12); thus, the trial court did afford Harvest Life an opportunity to challenge the merits of the evidence. Accordingly, the trial court acted within its discretion by concluding the admission of supplemental evidence would not work an injustice on Harvest Life.

### *Whether the evidence to be introduced is decisive*

As discussed below relative to Harvest Life's second issue, the supplemental evidence was decisive because it proved that Harvest Life applied only for the subsection (d)(12) exemption and Harvest Life failed to prove it satisfied that exemption.

In summary, the trial court did not abuse its discretion by admitting the supplemental evidence. We overrule Harvest Life's first issue.

## B. Denial of Exemptions

In its second stated issue, Harvest Life contends that, even if the trial court properly considered the supplemental evidence, the court erred by concluding that a "perceived technical deficit" precluded Harvest Life from receiving the

---

[3] Although Harvest Life asserts it lacked an opportunity to challenge authenticity of the supplemental evidence, we note that HCAD presented certified copies of all applications it offered as supplemental evidence.

exemptions. Under this issue, Harvest Life apparently challenges the merits of the trial court's conclusion that Harvest Life is not entitled to an exemption.

Exemptions from taxation are not favored by the law and will not be favorably construed. *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Am. Hous. Found. v. Harris Cnty. Appraisal Dist.*, 283 S.W.3d 76, 80 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally. *N. Alamo Water Supply Corp.*, 804 S.W.2d at 899; *Am. Hous. Found.*, 283 S.W.3d at 80. Accordingly, the claimant seeking the exemption bears the "burden of proof of clearly showing" that the organization falls within the statutory exception. *N. Alamo Water Supply Corp.*, 804 S.W.2d at 899; *Am. Hous. Found.*, 283 S.W.3d at 80.

We construe Harvest Life's second issue as a complaint concerning legal sufficiency of the evidence supporting the trial court's conclusions. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* When, as in the present case, a party attacks legal sufficiency relative to an adverse finding on which it had the burden of proof, it must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

10

The fact finder is the sole judge of witness credibility and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819.

### 1. Exemption claimed in applications

On appeal, Harvest Life does not seem to dispute that it was confined at trial to the exemption[s] claimed in its applications. The evidence supports the trial court's finding that Harvest Life applied for only the subsection (d)(12) exemption. We have reviewed the complete applications for 2007 through 2009. As stated above, the first three pages of the applications for each year generally inquire about the organization. The applicant may check one or more listed functions under the instruction, "Check the appropriate box(es) if any of the following statements describe a function performed by the organization." On all of the applications, Harvest Life checked multiple functions, including the function corresponding with subsection (d)(12).[4]

We cannot consider the first three pages of the applications in isolation—without the attached schedules—to determine the exemptions for which Harvest Life applied. It is clear this portion was intended to inquire whether the applicant qualifies in the first place as a charitable organization eligible to claim an exemption. However, this portion does not inquire about the use of each property for which an exemption is claimed. HCAD requires the applicant to complete "Schedule A" which is entitled "Description of Real Property" and instructs "Complete one Schedule A form for <u>EACH</u> parcel qualification for exemption." Indeed, Harvest Life does not attack the trial court's conclusion of law that

---

[4] For some properties at issue on appeal, Harvest Life filed more than one application for certain years. Our statements in this section are based on a summary of all applications filed by Harvest Life.
.

11

"[Harvest Life] is a nonprofit charitable organization as defined under the Texas Tax Property Code and, as such, is entitled to tax-exempt status *per se*; however, whether tax-exempt status must be granted for a particular year / particular property is determined on an application by application basis."

On the schedule is a category instructing, "Describe the primary use of this property." For each property and tax year at issue on appeal, Harvest Life wrote one of the following: "As a half-way house for men who are recently released from jail or prison," "Traditional Housing for Ex-Offenders," or "Transitional Housing thru agreement with Texas Department of Corrections and Parole." Harvest Life did not mention any other "primary use" of the property. The schedule also contains a section instructing, "List all other individuals and organizations that used this property in the past year, and give the requested information for each." Although this section apparently inquires about any uses in addition to the "primary use," on each schedule, Harvest Life repeated information about the use as a halfway house. Harvest Life listed no other uses under this section. Accordingly, the supplemental evidence demonstrated that Harvest Life applied for exemptions under only subsection (d)(12), which deals with halfway-house services.

Harvest Life characterizes its entries on the applications as a "paperwork mistake," "paperwork defect" or "scriveners error." However, the entries on the schedules clearly reflect that Harvest Life claimed only the subsection (d)(12) exemption for each property even if that was not Harvest Life's intent. For instance, on the one property for which the trial court granted exemptions for some tax years, Harvest Life wrote two different functions on each schedule, including subsection (d)(12). In contrast, on all the other schedules, Harvest Life did not

12

write any function other than subsection (d)(12), indicating a deliberate claim of only that exemption.

Consistent with its argument in the trial court, the apparent crux of the "paperwork defect" contention is that the trial court incorrectly concluded Harvest Life is not entitled to the subsection (d)(12) exemption because its attempt to claim that exemption on the applications was inadequate. However, the issue is not whether Harvest Life sufficiently described its function as a halfway house; the disposition is based on the fact that Harvest Life described only its function as a halfway house and the trial court concluded it did not satisfy that exemption. Accordingly, the trial court did not deny the exemptions because of a paperwork mistake; rather, the trial court evaluated whether Harvest Life is entitled to the exemption under subsection (d)(12) as though it properly applied for that exemption.

### 2. Whether Harvest Life satisfied the subsection (d)(12) exemption

As previously noted, to be entitled to a subsection (d)(12) exemption, Harvest Life had the burden to prove, in connection with specific properties during specific years, from 2007 to 2009, that it was "providing halfway house services **pursuant to a certification as a halfway house** by the pardons and paroles division of [TDCJ]." Tex. Tax Code Ann. § 11.18(d)(12) (emphasis added). At trial, the founder and president of Harvest Life testified that Harvest Life has a "contract with TDCJ that began in 2010 to - - as a contracted facility . . . ." She also testified that prior to 2010, Harvest Life, since 2006, was on an approved list in a category TDCJ called "qualified or alternative or some name that they give them." On cross-examination, she testified:

13

Q    . . . Do you have a certificate from the Texas Department of Criminal Justice parole division certifying that you are a halfway house?

A      They don't issue certificates.

Q      Yes or no question.

A      No.


The evidence is legally sufficient to support the trial court's conclusion that Harvest Life did not satisfy its burden to prove it was entitled to an exemption under subsection (d)(12).  Accordingly, we overrule Harvest Life's second issue.

We affirm the trial court's judgment.


/s/     Margaret Garner Mirabal
Senior Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[5]

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.