**Affirmed and Opinion filed July 23, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00358-CV

**ODYSSEY 2020 ACADEMY, INC., Appellant**

**V.**

**GALVESTON CENTRAL APPRAISAL DISTRICT, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17-CV-1133**

### O P I N I O N

Odyssey 2020 Academy, Inc., an open-enrollment charter school, appeals from a summary judgment denying it an ad valorem tax exemption. Odyssey contends the trial court erred in granting summary judgment in favor of appellee Galveston Central Appraisal District and in denying Odyssey declaratory relief. For the claimed exemption to apply, the property at issue, at a minimum, must be owned by the State of Texas or a political subdivision of the State. Because we conclude the property is not so owned, we affirm the trial court's judgment.

## Background

Odyssey is an open-enrollment charter school that is part of the Texas public school system.[1]  Odyssey's campus at issue is located on real property in Galveston County.  Odyssey subleases the relevant part of the property from a private entity, HEB Grocery Company, LP ("HEB"), which leases it from another private entity or entities.[2]  Under the sublease agreement between Odyssey and HEB, Odyssey is obligated to pay and remain current on ad valorem taxes assessed on the Property.

In December 2016, Odyssey notified the Galveston Central Appraisal District (the "District") that it claimed the Property was exempt from ad valorem taxes under Texas Tax Code section 11.11.  That section, entitled "Public Property," provides that "property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes."  *See* Tex. Tax Code § 11.11(a).  Odyssey asserts, and the District agrees, that Odyssey has used the Property exclusively as a public school.  As to whether the Property is owned by the State or one of its political subdivisions, Odyssey directed the District to Education Code section 12.128(a), which provides:

> (a) Property purchased or leased with funds received by a charter holder . . . :
>
> > (1) is considered to be public property for all purposes under state law;
> >
> > (2) is property of this state held in trust by the charter holder for the benefit of the students of the open-enrollment charter school; and

---

[1] *See* Tex. Educ. Code § 12.105 ("An open-enrollment charter school is part of the public school system of this state.").

[2] We refer to the subleased premises as the "Property."  The Property is owned by two Delaware limited liability companies based in Florida.  Odyssey owns other property in Galveston County but that property is not in dispute.

> (3) may be used only for a purpose for which a school district may use school district property.

Tex. Educ. Code § 12.128(a).

According to Odyssey, Education Code section 12.128 supports its request for a tax exemption because (1) Odyssey receives its funding from the State of Texas through the Foundation School Program[3] and (2) uses that state funding to make payments under the sublease. Thus, Odyssey argued to the District that the Property, being leased with state funds, is considered to be "public property for all purposes under state law." *See id*. Consequently, Odyssey contended the Property is "owned by this state" and is exempt from taxation under Tax Code section 11.11. Odyssey did not assert that it is a State agency itself or a political subdivision of the State for tax purposes.

Based on the above rationale, Odyssey asserted exempt status for the Property beginning on July 31, 2009,[4] and continuing for "all subsequent and future tax years until such time as the Property ceases to be eligible for tax-exempt status." Odyssey also sought a refund of all personal and real property taxes paid on the Property for the 2013-2015 tax years.

The District denied Odyssey's exemption request, and Odyssey protested to the District's Administrative Review Board (the "Board"). Odyssey presented evidence to the Board that: (1) Odyssey has leased or occupied all or part of the Property since July 31, 2009; (2) Odyssey made all lease payments for the Property with funds received under Education Code section 12.106; and (3) Odyssey uses the

---

[3] *See* Tex. Educ. Code § 12.106. According to Odyssey, the Foundation School Program is one of the primary state revenue sources for all public schools in Texas, including school districts and open-enrollment charter schools. *See* Tex. Educ. Code §§ 42.001 *et seq*.

[4] Odyssey signed the sublease agreement with HEB on July 31, 2009.

3

Property exclusively as a public school for purposes for which a school district may use school district property. The Board denied Odyssey's protest, and Odyssey appealed to the district court seeking judicial review of the Board's decision as well as declaratory relief.

In the trial court, the parties filed competing motions for summary judgment. After an oral hearing, the trial court signed a final summary judgment in the District's favor, ordering that Odyssey take nothing. Odyssey appeals.

**Analysis**

In two issues, Odyssey asserts that the trial court erred by granting the District's motion for summary judgment and denying Odyssey's motion for summary judgment.

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Tarr*, 556 S.W.3d at 278.

The Texas Constitution provides that all real property is subject to taxation unless exempt. Tex. Const. art. VIII, § 1(b). Article VIII, section 2, vests in the legislature authority to create and enumerate exemptions pertaining to public property used for public purposes. *Id*. art VII, § 2 (providing that "the legislature

may, by general laws, exempt from taxation public property used for public purposes").

Though the legislature is authorized to exempt certain property from taxation, the law does not favor tax exemptions, and courts are not to construe them favorably. *N. Alamo Water Supply Corp. v. Willacy Cty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Am. Hous. Found. v. Harris Cty. Appraisal Dist.*, 283 S.W.3d 76, 80 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Statutory taxation exemptions are subject to strict construction because they undermine equality and uniformity by imposing a greater burden on some taxpaying businesses and individuals rather than spreading the burden on all taxpayers equally. *See Brazos Elec. Power Coop., Inc., v. Tex. Comm'n on Envtl. Quality*, No. 17-1003, —S.W.3d—, 2019 WL 1966835, at *6 (Tex. May 3, 2019); *N. Alamo Water Supply*, 804 S.W.2d at 899; *Am. Hous. Found.*, 283 S.W.3d at 80. Accordingly, the claimant seeking an exemption bears a heavy burden of proof to clearly show that the claimant falls within the statutory exception. *See N. Alamo Water Supply*, 804 S.W.2d at 899; *Am. Hous. Found.*, 283 S.W.3d at 80. All doubts are resolved against the granting of an exemption. *Brazos Electric*, 2019 WL 1966835, at *6.

The claimed exemption at issue is contained in Tax Code subsection 11.11(a). According to that subsection, to be exempt from taxation a property must be (1) "owned by this state or a political subdivision of this state" and (2) "used for public purposes." Tex. Tax Code § 11.11(a). Odyssey contends that both requirements are met, and the District disputes only the first one. Odyssey says the exemption applies because lease payments are made with state funding and therefore the Property is deemed "public property for all purposes" pursuant to Education Code section 12.128(a)(1). Tex. Educ. Code § 12.128(a)(1).

Odyssey's argument is untenable for several reasons. For the exemption to apply, Tax Code section 11.11 requires property used for public purposes to be *publicly owned* by this State or a political subdivision of this State. Texas courts generally have defined "ownership" for taxation purposes in terms of the person or entity holding legal or equitable title. *See Childress County v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936) (person who has legal title is the "owner" for taxation purposes); *TRQ Captain's Landing L.P. v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726, 732 (Tex. App.—Houston [1st Dist.] 2006) (explaining that legal and equitable title holders may claim tax exemption), *aff'd,* 423 S.W.3d 374 (Tex. 2014); *Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497-98 (Tex. App.—Dallas 2001, pet. denied) (common meaning of "owner" in Tax Code is person or entity holding legal title or equitable right to obtain legal title to property). Moreover, whether property is publicly owned for tax-exemption purposes must be based on facts—not legislative declaration—establishing that the State or one of its political subdivisions has legal or equitable title. "Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration. If the state does not in fact own the taxable title to the property, *neither the Legislature by statute*, nor the [parties], *may make the state the owner thereof by simply saying that it is the owner*." *Tex. Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954) (emphasis added); *see also Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 912 (Tex. 1972).[5]

---

[5] "In this instance the Legislature is authorized to exempt 'public property used for public purposes.' It is essential then that the property be used for public purposes but that in itself is not enough. The property must, wholly apart from its use, be 'public property.' In our opinion this means public ownership, and the Texas courts have never held to the contrary. We accordingly

The most factually relevant decisions come from the Third Court of Appeals, which twice addressed situations involving a land lease between private and public entities. Both times, the court concluded that the exemption turned on whether the State or a political subdivision held legal or equitable title to the property, and title was determined based on the facts. *See Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex. App.—Austin 2004, no pet.); *Hays Cty. Appraisal Dist. v. Sw. Tex. State Univ.*, 973 S.W.2d 419, 422 (Tex. App.—Austin 1998, no pet.).

In *Signature Flight Support*, the City of Austin leased undeveloped land at the Austin-Bergstrom International Airport to private entities. *See* 140 S.W.3d at 836. The lease provided that the private entities would construct aircraft hangars and offices on the unimproved land, but once the City accepted the improvements it would hold legal title to them, and the City's title in the improvements would fully vest upon the lease term's completion. *Id.* at 836, 840. The appraisal district denied an exemption for the improvements, contending they were owned by the entities who built them. *Id.* at 836-37. The Third Court of Appeals held that the City had accepted the improvements and therefore possessed title, making the property tax-exempt because it was publicly owned. *Id.* at 840.

*Southwest Texas State University* is even more aligned with the facts in today's case. There, a private, nonprofit corporation—the Southwest Texas State University Support Foundation—purchased property and leased it to the University. *See* 973 S.W.2d at 420. The lease required the University to pay property taxes. *Id.* The University sought an exemption, which the appraisal district denied. *Id.* at 420-21. The Third Court of Appeals agreed with the appraisal district: although the

---

now hold that the clause in question authorizes the Legislature to exempt only publicly owned property used for public purposes." *Leander Indep. Sch. Dist.*, 479 S.W.2d at 912.

Foundation asserted it intended to transfer title to the University after the last mortgage payment, nothing in the record showed that the University held legal or equitable title as of the time it requested the exemption. *Id.* at 422. Thus, taxable ownership lay with the Foundation as the holder of legal title, and the property was not subject to an exemption. *Id.* ("As long as the University's interest in the property is contingent, taxable ownership is in the Foundation rather than the University.").

No argument of state ownership can rest on legal or equitable title here. It is undisputed that the Property is privately owned, and that the private owners possess legal title. Odyssey signed a sublease agreement knowing the property was privately owned, and Odyssey agreed to pay all ad valorem taxes assessed on the privately-owned Property. Additionally, though equitable title may support a public entity's claim for a tax exemption,[6] Odyssey does not argue that the State or a political subdivision has a claim of equitable title to the Property. Nothing in the summary-judgment record shows any basis for equitable title.

Moreover, we believe Odyssey's reliance on Education Code section 12.128 is misplaced. Few cases have construed section 12.128, but generally it comes into play when a school charter is revoked. *See Transformative Learning Sys. v. Tex. Educ. Agency*, 572 S.W.3d 281, 287, 290 (Tex. App.—Austin 2018, no pet.); *Tex. Educ. Agency v. Academy of Careers & Techs., Inc.*, 499 S.W.3d 130, 135-37 (Tex. App.—Austin 2016, no pet.) (upholding constitutionality of section 12.128). Upon revocation of a charter, section 12.128 requires the seizure of charter school property "purchased or leased with funds received by a charter holder under Section 12.106

---

[6] *See Signature Flight Support Corp.*, 140 S.W.3d at 840 ("Recent appellate cases suggest that a person holding 'equitable title' to property may be the owner for taxation purposes; equitable title is defined as the present right to compel legal title."); Tex. Att'y Gen. Op. No. KP-0066 (2016) ("Property is exempt under Tax Code section 11.11 if a public entity holds legal or equitable title to the property and the property is used for public purposes. An owner who has the present right to compel legal title holds equitable title.").

after September 1, 2001." *Transformative Learning*, 572 S.W.3d at 287 (discussing section 12.128).[7] Section 12.128 does not speak to tax exemptions as to leased real property during the period a charter remains active. It does not establish that this State or a political subdivision owns the Property for Tax Code section 11.11 tax-exemption purposes, and Odyssey's interest in the Property is limited to its leasehold. Education Code section 12.128 does not vest in Odyssey a right to claim a tax exemption on the State's behalf. In fact, the section does not mention taxes or exemptions at all. The legislature could have created the tax exemption Odyssey seeks by specifically expressing it within Tax Code section 11.11, Education Code section 12.128, or elsewhere, but the legislature has not done so. Further, Education Code section 12.128 does not change the above facts regarding legal and equitable title. To the extent Odyssey contends as much, section 12.128(a) does not purport to confer legal or equitable title in leased property to a charter school that leases the property from a private entity and uses it for public purposes, even though the charter school makes lease payments from funds received from the State. *See Tex. Turnpike Co.*, 271 S.W.2d at 402 (public ownership may not be conferred by legislative declaration).

In attempting to establish entitlement to a tax exemption, Odyssey bears a heavy burden of proof and must show that it clearly falls within a statutory exception, which we construe strictly. *See N. Alamo Water Supply*, 804 S.W.2d at 899; *Am. Hous. Found.*, 283 S.W.3d at 80. We conclude Odyssey has not met this burden. As the purported exemption here either is unestablished or in significant doubt, we are compelled to resolve that doubt against the granting of the exemption. *See Brazos Electric*, 2019 WL 1966835, at *6. Tax exemptions must be clearly

---

[7] The issue in *Transformative Learning* was whether the school had "purchased" the property in question. *See* 572 S.W.3d at 287. The case did not involve leased property.

enumerated, and the exemption Odyssey seeks is not. To the extent Education Code section 12.128(a) applies in the present context before a school charter has been revoked, we can say that this section does not mean that the Property Odyssey has leased is "owned by this state" as that phrase is contemplated under Tax Code section 11.11. Odyssey cites no authority holding otherwise.

For these reasons, we conclude the Property is not owned by this State or a political subdivision of this State, and therefore Odyssey is not entitled to the claimed tax exemption. *See* Tex. Tax Code § 11.11(a). The trial court did not err in granting summary judgment in the District's favor.

For similar reasons, and because such a claim is redundant, the trial court did not err in denying Odyssey's claim for declaratory relief. As Odyssey acknowledges, a declaratory-judgment action that merely mirrors a claim for statutory relief is redundant and should be dismissed. Odyssey stated in its summary-judgment motion, "It is undisputed that it is appropriate to dismiss a declaratory judgment action that only seeks redundant remedies—i.e., seeking review of an agency's order in the manner prescribed by statute, as well as by declaratory judgment. *See, e.g.*, *Local Neon Co., Inc. v. Strayhorn*, No. 03-04-00261-CV, 2005 WL 1412171, at *7 (Tex. App.—Austin June 16, 2005, no pet.)."

Accordingly, we overrule both of Odyssey's issues.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

10